IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| KENNEDY F. JONES, | ) |
| and | ) |
| STEPHEN J. VOGEL, | ) |
| Plaintiffs, | ) Case No. _____ |
| v. | ) |
| CITY OF KANSAS CITY, MISSOURI, | ) |
| Defendant. | ) |

## VERIFIED COMPLAINT

Plaintiffs Kennedy F. Jones and Stephen J. Vogel ("Jones" and "Vogel" respectively, and together "Plaintiffs"), by and through counsel, state as follows for their causes of action against Defendant City of Kansas City, Missouri (the "City"):

## NATURE OF THE CASE

1. This is an action for declaratory and injunctive relief from the City's unconstitutional overreach in enacting its source-of-income discrimination ordinance, Committee Substitute for Ordinance No. 231019, as amended (the "Ordinance"). A true and correct copy of the Ordinance is attached as **Exhibit 1**.

2. The stated purpose of the Ordinance is to promote fair housing and increase affordable housing opportunities by prohibiting housing discrimination on the basis of an individual's reasonably verifiable and lawful sources of income. *See* Ex. 1, Preamble; Ex. 1, Section 1, § 38-105(a). "Source of income" under the Ordinance includes any type of private, non-profit, or government assistance payment such as the federal housing choice vouchers

1

authorized by Section 8 of the Housing Act of 1937 (the "Section 8" program). *See* Ex. 1, Section 1, § 38-1(a)(31).

3. Underneath the laudable goal of fair and affordable housing, however, lies a more insidious truth—the Ordinance does not just require landlords to passively accept Section 8 vouchers as payment for rent. Rather, to be eligible to receive such payments, landlords *must* participate in and comply with *all* applicable Section 8 program requirements. Participation in the Section 8 program imposes substantial burdens on landlords, a fact that Congress recognized in making Section 8 participation voluntary.

4. So, the Ordinance effectively forces landlords who would otherwise choose not to participate in the Section 8 program (as is their right under federal law) into an untenable Hobson's choice—either involuntarily comply with each and every applicable Section 8 program requirement, or decline to do so and risk being prosecuted by the City for violating the Ordinance.

5. One critical aspect of Section 8 program participation is that for each housing unit a landlord rents to a Section 8 voucher-holder, the landlord *must* enter into a separate Housing Assistance Payments ("HAP") contract with the local public housing agency ("PHA") administering the Section 8 program. The HAP contract *must* be word-for-word in the form prescribed by the U.S. Department of Housing and Urban Development ("HUD"). A true and correct copy of the HAP contract form currently in effect, HUD-52641 (4/2023), is attached as **Exhibit 2**.

6. The mandatory, non-negotiable HAP contract includes several provisions that purport to grant the PHA and/or HUD access to the landlord's premises, records, and

2

information, without requiring that the governmental authority obtain any additional, voluntarily-provided consent from the landlord or a duly-issued warrant. The following HAP contract provisions are tantamount to a waiver of the landlord's search-and-seizure rights under the Fourth Amendment to the United States Constitution:

    a. "The PHA may inspect the contract unit and premises at such times **as the PHA determines necessary**, to ensure that the unit is in accordance with the HQS [housing quality standards]." Ex. 2, Part B, ¶ 3(e).

    b. "During the HAP contract term, the rent to owner may not exceed rent charged by the owner for comparable unassisted units in the premises. The owner **must** give the PHA any information requested by the PHA on the rents charged by the owner for other units in the premises or elsewhere." Ex. 2, Part B, ¶ 6(d).

    c. "The owner **must** cooperate with the PHA and HUD in conducting equal opportunity compliance reviews and complaint investigations in connection with the HAP contract." Ex. 2, Part B, ¶ 9(b).

    d. "The owner **must** provide any information pertinent to the HAP contract that the PHA or HUD may reasonably require." Ex. 2, Part B, ¶ 11(a).

    e. "The PHA, HUD and the Comptroller General of the United States shall have **full and free access to the contract unit and the premises, and to all accounts and other records of the owner that are relevant to the HAP contract, including the right to examine or audit the records and to make copies**." Ex. 2, Part B, ¶ 11(b).

    f. "***The owner must grant such access to computerized or other electronic records, and to any computers, equipment or facilities containing such records, and must provide any information or assistance needed to access the records***." Ex. 2, Part B, ¶ 11(c).

(Emphasis added.)

7. For landlords who voluntarily choose to participate in the Section 8 program, their consent to these onerous HAP contract provisions—and the attendant waiver of their Fourth Amendment rights—presumably would also be voluntary, assuming such landlords understood the provisions and their otherwise unconstitutional effects.

8. But Plaintiffs, who are landlords with rental units within City limits, do not choose to participate in the Section 8 program. They do not choose to enter into HAP contracts. They do not choose to waive their Fourth Amendment rights. And the City cannot constitutionally force them to do so.

9. To protect the rights of Plaintiffs and others similarly situated, this Court should declare the Ordinance unconstitutional and enter preliminary and permanent injunctions against its enforcement.

## PARTIES, JURISDICTION, AND VENUE

10. Jones is an individual and resident of Kansas City, Missouri.

11. Vogel is an individual and part-time resident of Lee's Summit, Missouri. Vogel also resides part-time in Franklin County, Florida.

12. The City is an incorporated city operating under a charter authorized by the Constitution of the State of Missouri and located in Jackson County, Clay County, Platte County, and Cass County, Missouri.

13. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 1983.

14. Venue in this district is proper under 28 U.S.C. § 1391(b).

## THE SECTION 8 PROGRAM

15. In 1974, Congress enacted Section 8 "[f]or the purpose of aiding low-income families in obtaining a decent place to live and … promoting economically mixed housing." 42 U.S.C. § 1437f(a).

4

16. From the outset, Congress intended that landlord participation in the Section 8 program be voluntary, as evidenced by the fact that Congress vested landlords with critical decisions, such as the selection of tenants. *See* 42 U.S.C. § 1437f(d)(1)(A) ("[T]he selection of tenants shall be the function of the owner.").

17. Beginning in the late 1980s, in the hopes of increasing landlord participation in the Section 8 program, Congress inserted two more restrictive provisions: the "take one, take all" provision, which required that any landlord who had entered into a rental agreement with at least one Section 8 tenant could not deny future applications based on Section 8 status alone; and the "endless lease" provision, which restricted a landlord's ability to refuse to renew a Section 8 tenant's lease. *See* Pub. L. No. 100-242, 101 Stat. 1815, § 147 ("take one, take all" provision); Pub. L. No. 101-625, 104 Stat. 4079, § 225 ("endless lease" provision); H.R. Rep. 100-122(I) (discussing concerns related to lack of landlord participation in Section 8 program).

18. It soon became clear that the "take one, take all" and "endless lease" provisions had a chilling effect on landlord participation in the Section 8 program, rather than increasing participation as intended. So, in the late 1990s, Congress repealed those provisions, thereby solidifying its intent that landlord participation in the Section 8 program remain voluntary.

19. The May 23, 1997, Senate Committee Report on the Public Housing Reform and Responsibility Act of 1997 demonstrates that Congress intentionally revoked its own "take one, take all" and "endless lease" provisions in favor of a voluntary program operating like the unassisted market:

> One of the key factors to the success of the tenant-based rental assistance program is the ability to attract property owners and managers to participate in the program. Owner participation plays a significant role in providing a broad

range of housing choices for assisted families. The history of Section 8 has shown, however, that private owners and managers have been reluctant to participate, in large part because of time-consuming and costly program requirements which conflict with normal market practices. ... For example, the "take one, take all" rule requires landlords who rent to one Section 8 recipient to rent to all otherwise qualified Section 8 recipients and not refuse to lease to such recipients because they receive Section 8 assistance. Further, Section 8 leases have no set terms and Section 8 landlords are required to renew leases for Section 8 tenants (the "endless lease" rule).

The Committee bill reforms Section 8 to make the program operate like the unassisted market as much as possible while maintaining program goals of providing low-income families with decent and affordable housing. The Committee expects that these changes, combined with landlord outreach efforts conducted by housing agencies as part of their program administration, will greatly expand the choice and availability of housing units.

The key reforms that encourage greater owner participation include providing flexibility in resident screening and selection, minimizing housing agency involvement in tenant-owner relations, eliminating the "take one, take all" and "endless lease" rules, and conforming Section 8 leases to generally accepted leasing practices. These reforms streamline and simplify the program by reducing the involvement of the Federal government and housing agencies.

S. Rep. 105-21.

20. The Section 8 program is administered by HUD in conjunction with local PHAs, in accordance with regulations promulgated by HUD. These regulations determine landlord and tenant eligibility; limit the types of properties that can participate in the program; govern the role of the landlord, tenant, and PHA; require the landlord to enter into a separate HAP contract with the PHA for each unit leased; set limits on the rent that landlords can charge; provide for governmental inspection of properties and financial records; and more. *See* 24 C.F.R. § 982.1 *et seq.*

21. As noted above, the Section 8 program requires that for each housing unit a landlord rents to a Section 8 voucher-holder, the landlord must enter into a separate HAP

6

contract with the PHA before the landlord may receive any housing assistance payments from the PHA. The HAP contract must be in the exact form required by HUD. *See* 24 C.F.R. §§ 982.162, 982.305(c), 982.451(a); *see also* Ex. 2, Instructions for use of HAP Contract – Use of this form.

22. Also as noted above, the HAP contract that landlords must sign contains several provisions that functionally require them to waive their Fourth Amendment search-and-seizure protections, including that they must "provide any information pertinent to the HAP contract that the PHA or HUD may reasonably require;" that governmental authorities "shall have full and free access to the contract unit and the premises, and to all accounts and other records of the owner that are relevant to the HAP contract;" and that they must "grant such access to computerized or other electronic records, and to any computers, equipment or facilities containing such records, and must provide any information or assistance needed to access the records." *See* Ex. 2, Part B, ¶ 11.

## THE ORDINANCE

23. Chapter 38 of the City's Code of Ordinances (the "Code"), sets forth the civil rights protections afforded under the City's municipal laws and governs the administration and enforcement of those rights.

24. Before the Ordinance was enacted, the Code prohibited discrimination in housing based on the "protected traits" of actual or perceived race, color, religion, national origin, sex, mental or physical disability, marital status, familial status, age, sexual orientation or gender identity, gender expression, ethnic background, and being a victim of domestic

7

violence, sexual assault or stalking. A true and correct copy of the previous version of § 38-105, as in effect before its repeal by the Ordinance, is attached as **Exhibit** 3. *See* Ex. 3, § 38-105(b).

25. Although the previous version of the Code did not include source of income as a "protected trait," it did separately prohibit discrimination based on an applicant's lawful source of income. But it also explicitly made clear that this prohibition would not require landlords to participate in an otherwise-voluntary benefit program, such as Section 8:

> (d) The following discriminatory housing practices shall be unlawful: … (10) To refuse to rent or to make any distinction or restriction for the rental of a dwelling unit solely because of the type of reasonably verifiable and lawful source of income. As used in this section, lawful source of income shall mean the lawful manner by which an individual supports themselves or their dependents, including but not limited to pay, child support payments, and rental assistance from a federal, state, local or nonprofit-administered benefit or subsidy program. **In no event shall an owner be compelled to participate in an otherwise voluntary benefit or subsidy program**.
>
> *See* Ex. 3, § 38-105(d)(10) (emphasis added).

26. On January 25, 2024, the City Council passed the Ordinance, which amended Chapter 38 of the Code to include source of income as a "protected trait" for purposes of the City's anti-discrimination ordinances.

27. The Ordinance went into effect on August 1, 2024. *See* Ex. 1, Section 4.

28. The changes under the Ordinance manifest the City's intent to mandate landlord participation in the Section 8 program.

29. First, the Ordinance defines source of income as follows:

> (31) *Source of income* means the type of income or finances used by an individual to acquire goods and services for themselves, their dependents, or others. It includes reasonably verifiable and lawful income from any occupation, profession, contract, agreement, activity, any type of private, non-profit, or government assistance or payment such as federal Housing Choice Vouchers as

8

authorized by Section 8 of the Housing Act of 1937, military pension payments, disability payments, court ordered payments, or any other form of reasonably verifiable and lawful income, including cash or tipped wages and payments from strike funds. *Source of income includes the program requirements for any type of private, non-profit, or government assistance or payment, unless compliance with such requirements would require unreasonable structural modifications to the dwelling.*

Ex. 1, Section 1, § 38-1(a)(31) (initial emphasis in original; latter emphasis added).

30. Second, the Ordinance repealed the previous version of § 38-105(d)(10), which expressly disavowed any requirement that a landlord participate in an otherwise-voluntary benefit program, and replaced it with the following provision, which does not include such language:

(d) The following discriminatory housing practices shall be unlawful: ... (10) To refuse to rent to a tenant solely on the basis of a rent-to-income ratio that does not take into account verifiable and lawful sources of income, such as vouchers, maintenance, disability payments, pensions, or other income supports. If a prospective tenant has a voucher, the landlord's requirement for any rent-to-income ratio shall apply only with respect to the portion of rent not covered by such prospective tenant's voucher amount, consistent with state and federal law, including, but not limited to, fair housing laws.

Ex. 1, Section 1, § 38-105(d)(10).

31. Third, because source of income is included as a "protected trait" under the Ordinance, it is now expressly unlawful for a landlord to, among other things, decline to rent to a Section 8 voucher-holder because they are a Section 8 voucher-holder. There is no safe-harbor provision for landlords who would otherwise choose not to participate in the Section 8 program. *See* Ex. 1, Section 1, § 38-105(b), (d)(1)–(4).

32. The Ordinance provides for a formal complaint and investigation procedure that may be initiated by any person claiming injury due to a prohibited discriminatory practice, including alleged source-of-income discrimination. *See* Ex. 1, Section 1, § 38-23. Further, the

9

City may initiate a complaint when it has reasonable cause to do so. *See* § 38-21(4), as currently in effect, attached as **Exhibit 4**.

33. If the City finds probable cause of a prohibited discriminatory practice, and the alleged discriminatory practice has not been resolved through conciliation, then the City "shall refer the matter to the city counselor for possible prosecution in municipal court or administer an administrative citation pursuant to Section 38-101, and … shall also begin a systematic investigation of all the [landlord's] rental properties in Kansas City and their screening practices." *See* Ex. 1, Section 1, § 38-23(f).

34. If a landlord is found in violation of a prohibited discriminatory practice or retaliation based on source of income, the landlord is subject to a mandatory $1,000.00 fine, which doubles if not paid before its due date. *See* Ex. 1, Section 1, § 38-101(b), (e).

35. If a landlord accrues more than one source-of-income discrimination violation in a 12-month period, the landlord's rental permits are subject to suspension "pending the completion of a corrective action plan prescribed by the director" of the City's civil rights enforcement office. *See* Ex. 1, Section 1, § 38-101(b)(1); Ex. 1, Section 2, § 34-855(6). The corrective action plan must include, but is not limited to, payment of additional fees and costs, completion of an anti-discrimination training program, and submission to additional oversight by the civil rights enforcement office. *See* Ex. 1, Section 2, § 34-857(b)–(c).

36. The City may revoke the rental permits of a landlord who fails or declines to comply with a rental permit suspension order, or whose suspension has been in effect for more than 90 days. *See* § 34-859, as currently in effect, attached as **Exhibit 5**. Any person who fails to

obtain or maintain a required rental permit, or who otherwise violates any permit requirement—including the obligation to refrain from committing any act of housing discrimination such as source-of-income discrimination—shall be deemed guilty of an ordinance violation and subject to penalties of fines and/or jail time. *See* § 34-832, as currently in effect, attached as **Exhibit 6**; § 34-848.1(a), as currently in effect, attached as **Exhibit 7**; §§ 34-863 and 34-864, as currently in effect, attached as **Exhibit 8**.

### PLAINTIFFS' OBJECTIONS TO SECTION 8 PROGRAM PARTICIPATION

37. Jones is a licensed real estate broker. He has been in the residential rental property business for over 30 years. *See* **Exhibit 9**, Affidavit of Kennedy F. Jones, ¶ 2.

38. Jones currently owns two residential rental units within City limits. *See* Ex. 9, ¶ 3.

39. Until the Ordinance was enacted, Jones understood that participating in the Section 8 program was voluntary. *See* Ex. 9, ¶¶ 4–11.

40. Jones accepted Section 8 vouchers at some of his rental units until the early 2000s. Jones elected to stop accepting Section 8 vouchers because he felt that the terms and conditions of the Section 8 program were unjust and financially unconscionable, including the burden imposed by complying with HUD/PHA inspection requirements. *See* Ex. 9, ¶ 5.

41. Jones also chooses not to participate in the Section 8 program due to concern that such participation would require him to waive his Fourth Amendment rights to be free from unreasonable searches and seizures. *See* Ex. 9, ¶ 12–15.

42. Despite the enactment of the Ordinance, Jones intends to continue declining to participate in the Section 8 program, and reasonably fears the threat of governmental action against him under the Ordinance, including imposing the penalties prescribed by the Ordinance. *See* Ex. 9, ¶ 15–16.

43. Vogel is an engineer with a background in telecommunications equipment. He has been in the residential rental property business since 2011. *See* **Exhibit 10**, Affidavit of Stephen J. Vogel, ¶ 2.

44. Vogel currently owns three residential rental units within City limits through his single-member limited liability companies, 2012 LLC and 2013 LLC. *See* Ex. 10, ¶ 3.

45. Until the Ordinance was enacted, Vogel understood that participating in the Section 8 program was voluntary. *See* Ex. 10, ¶ 4–12.

46. Vogel has never accepted Section 8 vouchers at any of his rental units. *See* Ex. 10, ¶ 5.

47. When Vogel began renting residential units, he looked into Section 8 program requirements. He elected not to participate in the Section 8 program due in part to the burdens imposed by Section 8 requirements, specifically including the burden imposed by complying with HUD/PHA inspection requirements. *See* Ex. 10, ¶ 6.

48. Vogel also chooses not to participate in the Section 8 program due to concern that such participation would require him to waive his Fourth Amendment rights to be free from unreasonable searches and seizures. *See* Ex. 10, ¶ 13–16.

49. Despite the enactment of the Ordinance, Vogel intends to continue declining to participate in the Section 8 program, and reasonably fears the threat of governmental action against him under the Ordinance and the imposition of penalties as prescribed by the Ordinance. *See* Ex. 10, ¶ 16-17.

**COUNT I — DECLARATORY JUDGMENT UNDER 28 U.S.C. §§ 2201 & 2202**

50. Plaintiffs incorporate and reallege all previous paragraphs of this Complaint as if fully restated here.

51. Plaintiffs' rights and legal relations are affected by the Ordinance, and Plaintiffs are entitled to seek this Court's determination of the validity of the Ordinance and a declaration of their rights in accordance with 28 U.S.C. §§ 2201 & 2202.

52. The Ordinance is invalid on its face and as applied to Plaintiffs because, by mandating that landlords either participate in the Section 8 program or risk bearing the consequences of violating the Ordinance, it unconstitutionally coerces landlords to sign HAP contracts and thereby waive their rights against unreasonable searches and seizures, and/or unconstitutionally conditions landlords' ability to maintain rental permits and rent real property on providing such a waiver, all in violation of the Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment.

53. The Ordinance is invalid on its face and as applied to Plaintiffs because it actually conflicts with and is preempted by federal law that makes Section 8 participation voluntary, in violation of the Supremacy Clause of Article VI of the United States Constitution.

54. An actual controversy exists between Plaintiffs and the City in that Plaintiffs intend to engage in a course of conduct—*i.e.*, to continue declining to participate in the Section 8 program—which conduct is affected with a constitutional interest but proscribed by the Ordinance, and there is a credible threat of prosecution by the City under the Ordinance.

WHEREFORE, Plaintiffs respectfully request that the Court declare that the Ordinance is unconstitutional on its face and as applied to Plaintiffs under the Fourth and Fourteenth Amendments to the United States Constitution; declare that the Ordinance is unconstitutional on its face and as applied to Plaintiffs under the Supremacy Clause of Article VI of the United States Constitution; declare that the Ordinance is void and unenforceable; award Plaintiffs their costs and fees as allowed by law; and grant any other relief the Court deems just and proper.

## COUNT II — CLAIM FOR RELIEF UNDER 42 U.S.C. § 1983

55. Plaintiffs incorporate and reallege all previous paragraphs of this complaint as if fully restated here.

56. Plaintiffs are individuals and persons entitled to sue under 42 U.S.C. § 1983 to vindicate their rights protected under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures, as applied to the states through the Fourteenth Amendment.

57. The City is a local governmental body subject to suit under 42 U.S.C. § 1983 for its official policies, practices, customs, and/or decisions that result in the deprivation of Plaintiffs' Fourth and Fourteenth Amendment rights.

58. The Ordinance is an official policy of the City, the enforcement of which poses an actual or imminent threat to Plaintiffs' Fourth and Fourteenth Amendment rights, in that Plaintiffs intend to engage in a course of conduct—*i.e.*, to continue declining to participate in the Section 8 program—which conduct is affected with a constitutional interest but proscribed by the Ordinance, and there is a credible threat of prosecution by the City under the Ordinance.

59. The Ordinance is the direct and proximate cause of the actual or imminent threat to Plaintiffs' Fourth and Fourteenth Amendment rights.

WHEREFORE, Plaintiffs respectfully request that the Court find that the Ordinance violates Plaintiffs' Fourth and Fourteenth Amendment rights; enjoin the City from enforcing the Ordinance; award Plaintiffs their costs and fees as allowed by law, including but not limited to attorney's fees under 42 U.S.C. § 1988; and grant any other relief the Court deems just and proper.

## COUNT III — FEDERAL PREEMPTION OF THE ORDINANCE

60. Plaintiffs incorporate and reallege all previous paragraphs of this complaint as if fully restated here.

61. The Supremacy Clause of Article VI of the United States Constitution invalidates state and local laws that interfere with, or are contrary to, the laws of Congress. Conflict preemption exists where the local law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

62. Even if the local law and the federal statute share the same ultimate goal, the local law is nonetheless preempted if it interferes with the methods by which the federal statute was designed to reach that goal.

63. Congress intended that the Section 8 program operate like the unassisted market as much as possible and that landlord participation in the program remain voluntary.

64. The Ordinance is preempted by federal law because it makes landlord participation in the Section 8 program mandatory, which stands as an obstacle to Congress's intent that Section 8 participation remain voluntary.

65. Plaintiffs are entitled to seek equitable relief to enjoin the City and its agents from enforcing the Ordinance, which is unconstitutional because it is preempted by federal law and so violates the Supremacy Clause.

WHEREFORE, Plaintiffs respectfully request that the Court find that the Ordinance is preempted by federal law that makes landlord participation in the Section 8 program voluntary; enjoin the City from enforcing the Ordinance; award Plaintiffs their costs and fees as allowed by law; and grant any other relief the Court deems just and proper.

## COUNT IV — PRELIMINARY AND PERMANENT INJUNCTION

66. Plaintiffs incorporate and reallege all previous paragraphs of this complaint as if fully restated here.

67. As set forth above, Plaintiffs are likely to succeed on the merits of their declaratory judgment, 42 U.S.C. § 1983, and federal preemption claims against the City.

68. Plaintiffs will suffer irreparable harm to their Fourth and Fourteenth Amendment rights unless the Court enjoins enforcement of the Ordinance, in that Plaintiffs

will be forced to choose between obeying an Ordinance they believe to be unconstitutional or risk prosecution for declining to obey it.

69. In order to avoid these injuries, Plaintiffs seek a preliminary injunction immediately enjoining the City from enforcing the Ordinance, and requiring the City to take all necessary actions to maintain the status quo pending final resolution of Plaintiffs' declaratory judgment, 42 U.S.C. § 1983, and federal preemption claims.

70. Once Plaintiffs have prevailed on their declaratory judgment, 42 U.S.C. § 1983, and federal preemption claims, Plaintiffs seek a permanent injunction forever enjoining the City from enforcing the Ordinance.

71. The injuries that Plaintiffs will suffer outweigh whatever harm these injunctions would cause the City.

72. These injunctions will not be against the public interest.

WHEREFORE, Plaintiffs respectfully request that the Court enter a preliminary injunction immediately enjoining the City from enforcing the Ordinance and requiring the City to take all necessary actions to maintain the status quo pending final resolution of Plaintiffs' declaratory judgment, 42 U.S.C. § 1983, and federal preemption claims; enter a permanent injunction forever enjoining the City from enforcing the Ordinance; award Plaintiffs their costs and fees as allowed by law; and grant any other relief the Court deems just and proper.

Respectfully submitted,

**LEWIS RICE LLC**

By: /s/ Robert W. Tormohlen
Robert W. Tormohlen, Mo. #40024
Douglas S. Stone, Mo. #45320
Scott A. Wissel, Mo. #49085
Ashlyn Buck Lewis, Mo. #65501
1010 Walnut, Suite 500
Kansas City, Missouri 64106
Tel: (816) 421-2500
Fax: (816) 472-2500
rwtormohlen@lewisricekc.com
dstone@lewisricekc.com
sawissel@lewisricekc.com
alewis@lewisricekc.com

*and*

**SEYFERTH BLUMENTHAL & HARRIS LLC**

Kevin J. Karpin, Mo. #45465
Bruce A. Moothart, Mo. #45517
4801 Main Street, Suite 310
Kansas City, Missouri 64112
Tel: (816) 756-0700
Fax: (816) 756-3700
kevin@sbhlaw.com
bruce@sbhlaw.com

*Attorneys for Plaintiffs*

## VERIFICATION OF KENNEDY F. JONES

I, Kennedy F. Jones, hereby declare that I am personally familiar with the facts and circumstances giving rise to this Verified Complaint, that I have read this Verified Complaint, and that the facts stated in this Verified Complaint are true and correct to the best of my actual knowledge, information, and belief, based upon personal knowledge and information provided to me and documents reviewed by me.

Signed under penalty of perjury this 29th day of August, 2024.

_Kennedy Jones_
Kennedy F. Jones

# VERIFICATION OF STEPHEN J. VOGEL

I, Stephen J. Vogel, hereby declare that I am personally familiar with the facts and circumstances giving rise to this Verified Complaint, that I have read this Verified Complaint, and that the facts stated in this Verified Complaint are true and correct to the best of my actual knowledge, information, and belief, based upon personal knowledge and information provided to me and documents reviewed by me.

Signed under penalty of perjury this __29__ day of __August__, 2024.

_____
Stephen J. Vogel