COMMITTEE SUBSTITUTE FOR ORDINANCE NO. 231019, AS AMENDED

Amending various sections of Chapter 38, "Civil Rights," and Chapter 34, "Health and Sanitation," for the purpose of classifying source of income as a protected trait in regard to housing discrimination, requiring an annual report on source of income discrimination complaints and enforcement, and requiring standard language in rental applications; and directing the City Manager to provide notification of this ordinance through various communication channels and identify an annual source of funding to implement the provisions of this ordinance; reducing the Contingent Appropriation by $1,000,000.00 in the General Fund; appropriating that amount for the Landlord Risk Mitigation Fund Pilot Program; and designating requisitioning authority.

WHEREAS, discrimination on the basis of cash income, such as Supplemental Security Income (SSI), Social Security Disability Insurance (SSDI), child support, tipped wages, and rental assistance is also rampant; and

WHEREAS, nearly half of residents residing in voucher-based households are children; and

WHEREAS, the Housing Choice Voucher Program, codified at 42 U.S.C. §1437f and often referred to as Section 8 of the Housing Act of 1937, was designed to increase opportunities for poor families and reduce the concentration of poverty by neighborhood; and

WHEREAS, the program does not work as intended for many participants, primarily because property owners will not accept their vouchers, leading to tenants not being able to utilize the voucher; and

WHEREAS, a growing number of states and localities have enacted laws, known as source of income protection laws, that can increase voucher acceptance, including the other Missouri cities of St. Louis, Webster Groves, and Clayton; and

WHEREAS, the City has substantial interest in reducing homelessness by increasing housing opportunity for renters by preventing discrimination based on a prospective tenant's lawful and reasonably verifiable source of income; and

WHEREAS, the number of property owners who accept renters regardless of lawful source of income is significantly increased when a source of income protection law is in place, and the likelihood of a voucher holder finding housing in a higher-income, higher opportunity area increases; NOW, THEREFORE

BE IT ORDAINED BY THE COUNCIL OF KANSAS CITY:

Section 1. That Chapter 38 of the Code of Ordinances entitled "Civil Rights" is hereby amended by repealing Sections 38-1, 38-23, 38-101 and 38-105, and enacting in lieu thereof new sections of like number and subject matter to read as follows:

1

EXHIBIT 1

**Sec. 38-1. Definitions.**

(a)  The following words, terms and phrases, when used in this chapter, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning or an alternative definition has been provided:

(1)  *Age*  means an age of 40 or more years, except that it shall not be an unlawful employment practice for an employer to require the compulsory retirement of any person who has attained the age of 85 and who, for the two-year period immediately before retirement, is employed in a bona fide executive or high policymaking position, if such person is entitled to an immediate nonforfeitable annual retirement benefit from a pension, profit sharing, savings or deferred compensation plan, or any combination of such plans, of the employer, which equals, in the aggregate, at least $344,000.00.

(2)  *City* means the City of Kansas City, Missouri.

(3)  *Commission* means the city human rights commission.

(4)  *Complainant* means any person claiming injury by the alleged violation of Chapter 213, RSMo, or of this Chapter, including persons who believe they will be injured by an unlawful discriminatory practice that is about to occur.

(5)  *Complaint* means a verified written statement of facts and circumstances, including dates, times, places and names of persons involved in any alleged violation of any provision of Chapter 213, RSMo, or of this Chapter.

(6)  *Contract* means any contract to which the city shall be a contracting party, except the following:

　　　a.　　Personal services contracts.

　　　b.　　Emergency requisitions for goods, supplies or services.

　　　c.　　Impressed accounts in the nature of petty cash funds.

　　　d.　　Contract or lease, the cost of which will not exceed $300,000.00.

(7)  *Covered multifamily dwelling* means a building consisting of four or more units if the building has one or more elevators or a ground floor unit in a building consisting of four or more units.

(8)  *Department* means the department of civil rights and equal opportunity.

(9)  *Director* means the director of the civil rights and equal opportunity department or their delegate.

2

EXHIBIT 1

(10) *Disability* means with respect to employment, a person who is otherwise qualified and who, with reasonable accommodation, can perform the essential functions of the job in question. Generally, a person with a disability is any person who:

    a.    Has a physical or mental impairment which substantially limits one or more major life activities;

    b.    Has a record of having such impairment; or

    c.    Is regarded as having such an impairment.

(11) *Dwelling* means any building, structure or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure or portion thereof.

(12) *Employee* means any individual employed by an employer, but does not include an individual employed by his parents, spouse or child or any individual employed to render services as a domestic in the home of the employer.

(13) *Employer* includes any person employing six or more employees.

(14) *Employment agency* means any person, agency or organization, regularly undertaking, with or without compensation, to procure opportunities for employment or to procure, recruit, refer or place employees.

(15) *Familial status* means one or more individuals, who have not attained the age of 18 years, being domiciled with:

    a.    A parent or another person having legal custody of such individual or individuals; or

    b.    The designee of such parent or other person having such custody, with the written permission of such parent or other person. The protection afforded against discrimination on the basis of familial status shall apply to any person who is pregnant or is in the process of securing legal custody of any individual who has not attained the age of 18 years. No provision in this chapter regarding familial status shall apply to housing for older persons, as defined in section 3607 of title 42 of the United States Code Annotated.

(16) *Family* includes a single individual.

(17) *Franchise holder* means any individual, partnership, corporation, association or other entity, or any combination of such entities, holding a franchise hereafter granted or renewed by the city.

3

EXHIBIT 1

(18)   *Gender identity* means the actual or perceived appearance, expression, identity or behavior of a person as being male or female, whether or not that appearance, expression, identity or behavior is different from that traditionally associated with the person's designated sex at birth.

(19)   *Labor organization* means any organization which exists for the purpose in whole or in part of collective bargaining or for dealing with employers concerning grievances, terms or conditions of employment, or for other mutual aid or protection in relation to employment.

(20)   *Owner* means any person who:

   a.   has legal title to any building or structure with or without accompanying actual possession thereof; or

   b.   has charge, care or control of any building or structure or part thereof as agent or personal representative of the person having legal title to the building or structure or part thereof; or

   c.   is an agent or designee of a person listed in subsections 1 or 2 herein; or

(21)   *Performance of work* means the furnishing of any personal service, labor, materials or equipment used in the fulfillment of a contractor's obligation under a city contract.

(22)   *Person* includes one or more individuals, corporations, partnerships, associations, labor organizations, legal representatives, mutual companies, joint stock companies, trusts, unincorporated organizations, trustees, trustees in bankruptcy, receivers, fiduciaries and other organizations; except the term "person" does not include any local, state or federal governmental entity.

(23)   *Prohibited dress code* means a set of rules governing, prohibiting or limiting access to a place or business, or portion thereof, defined herein as a "public accommodation" because of any of the following:

   a.   The wearing of jewelry, the manner in which jewelry is worn or the combination of items of jewelry worn,

   b.   The wearing of a garment or headdress which is generally associated with specific religions, national origins or ancestry,

   c.   The length of the sleeve of a shirt or the leg of a pair of pants or shorts is too long, except that nothing herein shall be construed to prohibit a dress code that requires the wearing of a shirt,

4

EXHIBIT 1

d.   The style, cut or length of a hair style,

e.   The colors of the garments,

f.   In conjunction with a major Kansas City sporting event the wearing of athletic apparel which displays either a number, a professional or college team name or the name of a player;

g.   The wearing of tee-shirts, except that nothing herein shall be construed to prohibit a dress code that requires such tee-shirts to have sleeves, or to prohibit a dress code that does not allow undershirts, undergarments, or tee-shirts of an inappropriate length. Designer tee-shirts, which are fitted and neat, cannot be banned.

(24)   *Public accommodation* means any place or business offering or holding out to the general public goods, services, privileges, facilities, advantages or accommodations for the peace, comfort, health, welfare and safety of the general public, or providing food, drink, shelter, recreation or amusement, including but not limited to:

a.   Any inn, hotel, motel or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence.

b.   Any restaurant, tavern, cafeteria, lunchroom, lunch counter, soda fountain or other facility principally engaged in selling food for consumption on the premises, including but not limited to any such facility located on the premises of any retail establishment.

c.   Any gasoline station, including all facilities located on the premises of such gasoline station and made available to the patrons thereof.

d.   Any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment.

e.   Any public facility owned, operated or managed by or on behalf of this city or any agency or subdivision thereof, or any public corporation; and any such facility supported in whole or in part by public funds.

f.   Any establishment which is physically located within the premises of any establishment otherwise covered by this definition or within the premises in which is physically located any such covered establishment, and which holds itself out as serving patrons of such covered establishment.

g.   Any institution, association, club or other entity that has over 250 members, provides regular meal service, and regularly receives payment for meals,

5

EXHIBIT 1

beverages, dues, fees, the use of its facilities or services directly or indirectly from or on behalf of nonmembers in furtherance of trade or business.

(25) *Redevelopment area* means a tax increment redevelopment area as defined in section 99.805(11); RSMo, a planned industrial expansion project area as defined in section 100.300, et seq., RSMo; an urban renewal project area or land clearance project area as defined in section 99.300, et seq., RSMo; any area under the control of the port authority of Kansas City, Missouri, or subject to a contract, lease or other instrument to which the port authority is a party; or an area determined by the city to be blighted pursuant to chapter 353, RSMo.

(26) *Rent* means to lease, sublease, let or otherwise grant for a consideration the right to occupy premises not owned by the occupant.

(27) *Respondent* means any person against whom it shall be alleged by complaint or identified during the course of an investigation that such person has violated, is violating or is about to violate any provision of Chapter 213, RSMo, or this Chapter.

(28) *Screening Practices* means the standard manner by which an owner evaluates and assesses prospective tenants prior to entering into a rental agreement.

(29) *Sex* shall include sexual harassment.

(30) *Sexual orientation* means actual or perceived heterosexuality, homosexuality or bisexuality.

(31) *Source of income* means the type of income or finances used by an individual to acquire goods and services for themselves, their dependents, or others. It includes reasonably verifiable and lawful income from any occupation, profession, contract, agreement, activity, any type of private, non-profit, or government assistance or payment such as federal Housing Choice Vouchers as authorized by Section 8 of the Housing Act of 1937, military pension payments, disability payments, court ordered payments, or any other form of reasonably verifiable and lawful income, including cash or tipped wages and payments from strike funds. Source of income includes the program requirements for any type of private, non-profit, or government assistance or payment, unless compliance with such requirements would require unreasonable structural modifications to the dwelling.

(32) *Subcontractor* means any individual, partnership, corporation, association or other entity, or other combination of such entities, which shall undertake, by virtue of a separate contract with a contractor, to fulfill all or any part of any contractor's obligation under a contract with the city, or who shall exercise any right granted to a franchise holder, and who has 50 or more employees exclusive of the parents, spouse or children or such subcontractor.

6

EXHIBIT 1

(33)   *Systematic investigation* means a series of investigations, as defined in section 38-23, sufficient to understand an owner's common and usual screening practices and determine whether those practices violate any Ordinance.

(34)   *Unlawful discriminatory practice* means any discriminatory practice as defined and prohibited by sections 38-103, 38-105, 38-107, 38-109, 38-111 and 38-113.

## Sec. 38-23. Complaint procedure.

(a) *Filing of complaint.*

(1)   Any person claiming injury by an allegedly unlawful discriminatory practice may, by themselves, a representative designated in writing, or a city official, submit a complaint with the director by, emailing an email address designated by the Civil Rights Enforcement Office, visiting the Civil Rights Enforcement Office in person during business hours, or calling 311 to begin the process of submitting a formal verified complaint. This complaint shall state the name and address of the person or business entity alleged to have committed the unlawful discriminatory practice complained of and which shall set forth the particulars thereof and contain such other information as may be required by the director for the investigation of the complaint.

(2)   Any complaint filed pursuant to Chapter 213, RSMo, or this chapter must be filed within 180 days after the alleged unlawful discriminatory practice could have been discovered through reasonable diligence.

(3)   The city shall provide interpretation and translation services to any person attempting to submit a complaint pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d et. seq. and Ex. Ord. No. 13166.

(b) *Investigation.* After the filing of any complaint other than those described in Section 38-23(c), the director shall:

(1)   During the period beginning with the filing of such complaint and ending with the notice of public hearing before the commission, to the extent possible, engage in conciliation with respect to such complaint. Any agreement reached during these conciliation efforts shall conform to the requirements of subsection (e) of this section.

(2)   Promptly serve notice upon the complainant acknowledging and advising the complainant of the time limits and choice of forums provided under Chapter 213, RSMo, and this chapter.

(3)   Promptly serve notice on the respondent or the person charged with a discriminatory practice advising of his or her procedural rights and obligations under this chapter, together with a copy of the complaint.

EXHIBIT 1

(4)     Commence investigation of the complaint within 30 days of the receipt of the complaint.

(5)     For housing and public accommodation complaints, complete the investigation of the complaint within 100 days unless it is impracticable. If the director is unable to complete the investigation within 100 days, the director shall notify the complainant and the respondent in writing of the reasons for not doing so.

(6)     Make final administrative disposition of a housing or public accommodations complaint within one year of the date of receipt of a complaint unless it is impracticable to do so, in which case the director shall notify the complainant and respondent in writing of the reasons for not doing so.

(c)  *Source of Income Investigation.* After the filing of any complaint solely pertaining to source of income discrimination or discrimination as defined in Section 38-105(d)(10)-(d)(14), the director shall:

(1)     To the extent possible, engage in conciliation with respect to such complaint during the period beginning with the filing of such complaint and ending with either the issuance of a fine or any other punitive measures by the city or a finding of no probable cause pursuant to subsection (d) of this section. Any agreement reached during these conciliation efforts shall conform to the requirements of subsection (e) of this section.

(2)     Promptly serve notice upon the complainant acknowledging and advising the complainant of the time limits and choice of forums provided under this chapter.

(3)     Promptly serve notice on the respondent or the person charged with a discriminatory practice advising of his or her procedural rights and obligations under this chapter, together with a copy of the complaint.

(4)     Commence investigation of the complaint within 10 business days of the receipt of the complaint.

(5)     Complete the investigation of the complaint within 30 days of the receipt of the complaint. If the director is unable to complete the investigation within 30 days, the director shall notify the complainant and the respondent in writing of the reasons for not doing so.

(d)  *No probable cause finding.* If it shall be determined after such investigation that no probable cause exists for crediting the allegations of the complaint, the director shall cause to be issued and served upon all parties, written notice of such determination.

(e)  *Probable cause finding; conciliation.*

8

EXHIBIT 1

(1)     If it shall be determined after such investigation that probable cause exists for crediting the allegations of the complaint, the director shall immediately endeavor to eliminate the unlawful discriminatory practice complained of by conference, conciliation and persuasion. Each conciliation agreement shall include provisions requiring the respondent to refrain from the commission of such allegedly unlawful discriminatory practice in the future and may contain such further provisions as may be agreed upon by the complainant and the respondent subject to the approval of the director. The director shall not disclose what has transpired in the course of such endeavors and shall not make or maintain a public record of such endeavors as the term "public record" is defined in Chapter 610, RSMo.

(2)     If the respondent, the complainant and the director agree upon conciliation terms, the director shall compile the terms of the conciliation agreement for the signature of the complainant, respondent and director.

(f)  *Failure to conciliate; hearing or prosecution.* If the director believes that they have failed to eliminate an allegedly unlawful discriminatory practice through conciliation, the director shall cause to be issued and served a written notice thereof. If the complaint alleges a discriminatory practice prohibited by this chapter, the director shall refer the matter to the city counselor for possible prosecution in municipal court or administer an administrative citation pursuant to Section 38-101, and the director shall also begin a systematic investigation of all the respondent's rental properties in Kansas City and their screening practices.. If the complaint alleges a discriminatory practice prohibited by Chapter 213, RSMo, the director shall refer the matter to the commission for hearing.

(g) In the event any section, paragraph, sentence, clause, phrase or portions of this section is declared invalid for any reason, the remainder of this section shall remain in full force and effect.

## Sec. 38-101. Prohibition and penalties

(a)  Discriminatory practices, as defined in sections 38-102, 38-103, 38-105, 38-107, 38-109, 38-111 and 38-113, are prohibited. Any person who engages in a prohibited discriminatory practice other than source of income discrimination shall be guilty of an ordinance violation, punishable by a fine of not more than $1,000.00, by imprisonment of not more than 180 days, or by such fine and imprisonment.

(b)  Any person found in violation of a prohibited discriminatory practice or retaliation based on source of income, which includes, among other things, all violations of Section 38-105(d), shall be subject to a fine of $1000.00.

(1)     The director shall refer any person found in violation of a prohibited discriminatory practice or retaliation based on source of income more than once within a 12-month period to the director of the health department and recommend that the person's rental permits be placed on Special Probationary Status pursuant to Section 34-

EXHIBIT 1

855(6) of the City's Code of Ordinances pending the completion of a corrective action plan prescribed by the director.

(c) Any respondent found in violation of any portion of the terms included in a conciliation agreement signed by the respondent and the director shall be guilty of an ordinance violation and subject to a fine of $1000.00.

(d) Nothing in sections 38-102, 38-103, 38-105, 38-107, 38-109, 38-111 and 38-113 shall be read or interpreted to require the imposition of quotas or any form of affirmative action to remedy any past practices.

(e) Any fine which is not paid on or before its due date shall accrue a one-time penalty in an amount equal to the original fine. Said penalty shall be collected in the same manner as the underlying fine.

(f) Revenue from fines incurred pursuant to Section 38-105(d) shall be allocated to the Civil Rights and Equal Opportunity Department to carry out enforcement.

(g) In the event any section, paragraph, sentence, clause, phrase or portions of this section is declared invalid for any reason, the remainder of this section shall remain in full force and effect.

**Sec. 38-105. Housing.**

(a) It is the policy of the city to provide, within constitutional limitations, for fair housing throughout the corporate limits of the city.

(b) Within this section, "protected trait" shall mean actual or perceived race, color, religion, national origin, sex, mental or physical disability, marital status, familial status, age sexual orientation or gender identity, gender expression, ethnic background, being a victim of domestic violence, sexual assault or stalking, or source of income.

(c) If the director finds probable cause of a violation of this section, the director shall notify the director of health of the violation and assist the director of health in any related investigation, in addition to pursuing any enforcement authorized by Chapter 213 RSMo, this chapter or other city ordinances.

(d) The following discriminatory housing practices shall be unlawful:

(1)     To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of property offered for sale or rental, or otherwise make unavailable or deny a dwelling to any person, because of a protected trait, other than, in the case of a potential sale, source of income.

(2)     To discriminate against any person in the terms, conditions or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection

10

EXHIBIT 1

therewith, because of a protected trait, other than, in the case of a potential sale, source of income.

(3)     To make, print or publish, or cause to be made, printed or published, any notice, statement or advertisement with respect to the sale or rental of a dwelling that indicates any preference or limitation based on a protected trait or an intention to make any such preference, limitation, or discrimination, other than, in the case of a potential sale, source of income.

(4)     To represent to any person, because of a protected trait, that any dwelling is not available for inspection, sale or rental when such dwelling is in fact so available, other than, in the case of a potential sale, source of income.

(5)     To induce or attempt to induce any person to sell or rent any dwelling by representations regarding the entry or prospective entry into the neighborhood of persons of a particular protected trait, other than, in the case of a potential sale, source of income.

(6)     For a person in the business of insuring against hazards to refuse to enter into or discriminate in the terms, conditions or privileges of a contract of insurance against hazards to a dwelling because of a protected trait pertaining to persons owning or residing in or near the dwelling, other than, in the case of a potential sale, source of income.

(7)     To discriminate in the sale or rental or to otherwise make unavailable or deny a dwelling to any buyer or renter because of a disability of:

   a.     That buyer or renter;

   b.     A person residing in or intending to reside in that dwelling after it is sold, rented or made available; or

   c.     Any person associated with that buyer or renter.

(8)     To discriminate against any person in the terms, conditions or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a disability of:

   a.     That person;

   b.     A person residing in or intending to reside in that dwelling after it is so sold, rented or made available; or

   c.     Any person associated with that person.

(9)     To sexually harass a property owner or tenant.

11

EXHIBIT 1

(10)    To refuse to rent to a tenant solely on the basis of a rent-to-income ratio that does not take into account verifiable and lawful sources of income, such as vouchers, maintenance, disability payments, pensions, or other income supports. If a prospective tenant has a voucher, the landlord's requirement for any rent-to-income ratio shall apply only with respect to the portion of rent not covered by such prospective tenant's voucher amount, consistent with state and federal law, including, but not limited to, fair housing laws.

(11)    To refuse to rent to a tenant solely because of an adverse credit report or lack of credit history without reference to additional information provided pursuant to Section 38-105(e).

(12)    To refuse to rent to a tenant solely because of prior evictions or alleged damages without reference to additional information provided pursuant to Section 38-105(e), except that prior evictions or alleged damages that occurred within one year of the date that the tenant would begin a new rental agreement may result in refusal to rent to that tenant.

(13)    To refuse to rent to a tenant solely because of prior convictions or arrests without reference to additional information provided pursuant to Section 38-105(e).

(14)    To increase charges, reduce services, or require the tenant bear financial or other responsibility for any penalties imposed as a result of violating sections 38-105, 38-111 or 38-113.

(15)    It shall not constitute a violation of this subsection to deny a rental application based on reference to two or more factors described in Section 38-105(d)(10)-(d)(14).

(e) While a person may examine and consider a criminal background check, credit history, or rental history in reviewing an application for rental housing, the person shall review and consider additional information provided by the rental applicant, including, but not limited to, personal references, recency and status of any evictions, and any actions taken by the rental applicant to resolve past evictions, credit challenges, or alleged damages, the recency and severity of any convictions, the violent or sexual nature of any prior convictions, the facts or circumstances surrounding criminal conduct, the age of the applicant at the time of the conduct, the age or vulnerability of the victim of the conduct, evidence that the applicant has maintained a good tenant history in the intervening time, and evidence of rehabilitation efforts, consistent with state and federal law, including, but not limited to, fair housing laws. Denying an application based on reference to such factors specific to the individual applicant shall not constitute a violation of this Section.

(1)    An owner shall not be responsible for misinformation or incorrect information obtained from third parties as part of screening practices so long as the landlord uses reasonable diligence in assessing the veracity and reliability of third-party information, and identifies the third-party source used. An owner who used

12

EXHIBIT 1

misinformation or incorrect information to deny an application shall reconsider an application upon receipt of corrected information.

(f)     Anytime a person denies an application for rental housing, said person must inform the prospective tenant that their application was denied.

(1)     If a prospective tenant requests the rationale for their denied application, the person who denied their application must affirmatively state that it was not on the basis of their membership of a protected class or a protected trait as defined by this chapter, and inform the prospective tenant in writing of their rights as defined by this chapter.

(g) For purposes of this section, the term "discrimination" includes:

(1)     A refusal to permit at the expense of the disabled person reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises; except that, in the case of a rental, the landlord may, where it is reasonable to do so, condition permission for a modification on the renter's agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted;

(2)     A refusal to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling; or

(3)     In connection with the design and construction of covered multifamily dwellings for first occupancy, a failure to design and construct those dwellings in a manner that:

a.     The public and common use portions of such dwellings are readily accessible to and usable by disabled persons. This shall include at least one building entrance on an accessible route unless it is impracticable to do so because of the terrain or unusual characteristics of the site;

b.     All doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by disabled persons in wheelchairs; and

c.     All premises within such dwellings contain the following features of adaptive design:

1.     An accessible route into and through the dwelling;

2.     Light switches, electrical outlets, thermostats and other environmental controls in accessible locations;

13

EXHIBIT 1

3.       Reinforcements in bathroom walls to allow later installation of grab bars; and

4.       Usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

Compliance with the appropriate requirements of the American National Standard for buildings and facilities providing accessibility and usability for physically disabled persons, commonly cited as ANSI Al 17.1, suffices to satisfy that the requirements of subsection (b)(3)a of this section are met.

(4)     For purposes of subsections (a)(7) and (8) of this section, discrimination includes any act that would be discrimination under 42 USC 3604(f)(3) through (9).

(h) Nothing in this section shall apply to rooms or units in dwellings containing living quarters occupied or intended to be occupied by no more than four families living independently of each other if the owner actually maintains or occupies one of such living quarters as the owner's residence, and if the dwelling contains any rooms, except hallways, which are shared by the families or the owner.

(i) Nothing in this section shall prohibit a religious organization, association or society, or any nonprofit institution or organization operated, supervised or controlled by or in conjunction with a religious organization, association or society, from discriminating in the sale, rental or occupancy of dwellings which it owns or operates for other than a commercial purpose on the basis of religion, sexual orientation or gender identity, or from giving preference to persons on those bases.

(j) In the event any section, paragraph, sentence, clause, phrase or portions of this section is declared invalid for any reason, the remainder of this section shall remain in full force and effect.

## Sec. 38-106. Report on source of income discrimination.

(a) The director shall submit to the Mayor and City Council, on June 1 of each year, a report detailing the investigation and disposition, including prosecution, of complaints of source of income discrimination filed under Section 38-23.

(b) Such annual report shall include, among other things:

(1)     The number of discrimination complaints that were filed;

(2)     The number of complaints that resulted in a conciliation agreement, an ordinance violation, a referral to the director of the Health Department or a rental permit being placed on Special Probationary Status;

14

EXHIBIT 1

(3)     The number of fines issued, the number of fines collected, and the amount of each fine;

(4)     The names of property owners whose permits were suspended because they were found in violation of this chapter, and the number of complaints, but not the names of property owners against whom the complaints were filed, that resulted in a conciliation agreement, an ordinance violation, a referral to the director of the Health Department or a permit being placed on Special Probationary Status.

(5)     The total number of individuals who filed complaints, disaggregated by the following characteristics of such individuals:

      a.     Postal code of residence;

      b.     Age of head of household;

      c.     Household size;

      d.     Racial and ethnic identity;

      e.     Gender and sex identity;

      f.     Estimated length of tenancy;

      g.     Approximate household income;

      h.     Tenancy in rent-regulated housing;

      i.     Tenancy in housing operated by the Housing Authority of Kansas City;

      j.     Survey results indicating satisfaction of representation service and process; and

      k.     Postal code of residence post-proceeding.

(c) The director will ensure that at the time the report is submitted, disaggregated data at the address level are made available on Open Data KC, of which includes attributes for each address as specified in Sec. 38-106(b).

(d) The director shall also conduct random audits four times per month of rental advertisements for discriminatory language against any protected group. The director shall also randomly conduct four fair housing testing audits per year. If the director finds discriminatory behavior in these investigations, they will pursue action accordingly.

(e) In the event any section, paragraph, sentence, clause, phrase or portions of this section is declared invalid for any reason, the remainder of this section shall remain in full force and effect.

15

EXHIBIT 1

Section 2.  That Chapter 34 of the Code of Ordinances entitled "Health and Sanitation" is hereby amended by repealing Sections 34-831, 34-834, 34-837, 34-855, 34-856, and 34-857, and enacting in lieu thereof new sections of like number and subject matter to read as follows:

## Sec. 34-831. - Definitions.

The following words, terms and phrases, when used in this article, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning:

*Direct family member* means one's child, grandchild, mother, father, sibling, mother-in-law, father-in-law, grandparent, or the step equivalent of each of those.

*Director* means the director of health.

*Hazardous area* means areas of structures or buildings posing a degree of hazard greater than normal to the general occupancy of a building or structure, such as areas used for the storage or use of combustibles or flammable, toxic, noxious or corrosive materials, or heat-producing appliances.

*Health hazard violation* means a violation when in noncompliance, is more likely than other violations to contribute to injury, illness, or environmental health hazards.

*Non-health hazard violation* means a violation that poses a lesser threat to health and safety, but negatively affects health, and if left unaddressed, could become a health hazard violation.

*Offer to rent* means to extend an offer to enter into a written or oral agreement with a prospective tenant under which the prospective tenant shall occupy rental property as the tenant's residence.

*Owner* means any person not a tenant who, acting alone or jointly or severally with others:

(1)     Has legal title to any building or structure with or without accompanying actual possession thereof;

(2)     Has charge, care or control of any building or structure or part thereof as agent or personal representative of the person having legal title to the building or structure of part thereof; or

(3)     Is an agent or designee of a person listed in subsections (1) or (2) herein.

*Permit* means a permit issued by the director for making an offer to rent to a prospective tenant or owning, operating or managing rental property. The terms "permit" and "rental permit" are used interchangeably.

16

EXHIBIT 1

*Permit holder* means a person who is responsible for the operation of the rental property, such as the owner or the owner's agent, and who possesses a valid permit to operate a rental property.

*Person* means an association, corporation, individual, firm, partnership, other legal entity, government, governmental subdivision or agency.

*Prospective tenant* means a person who inquires about or applies to rent a rental property or rental unit from an owner for residential purposes

*Re-inspection* means an inspection conducted by the director to ensure corrective action is taken by fee permit holder subsequent to a previous inspection where noncompliance or violations of this article were found.

*Rental property* means a structure which consists of one or more residential rental units, where none of the tenants are owners or direct family members of owners. Duplexes in which one of the rental units is owner-occupied and rental units within an owner-occupied, single-family dwelling that is in compliance with the city's zoning codes shall not be considered rental property.

*Rental unit* means a rental property or part of a rental property used as a home, residence, or sleeping unit by a single person or household unit, or any grounds, or other facilities or area promised for the use of a tenant and includes, but without limitation, apartment units, boarding houses, rooming houses, mobile home spaces, and single and two-family dwellings.

*Tenant* means:

(1)     A person, not the legal owner, occupying a building or portion thereof as a rental unit; or

(2)     For purposes of this article, a purchaser under a contract for deed, rent-to-own agreement, or comparable executory agreement, where the purchaser resides in the premises and is not the legal owner of record, unless any such instrument or affidavit of equitable interest which specifically identifies the instrument is properly executed and filed of record with the recorder of deeds for the applicable county and a file stamped copy thereof, along with a copy of the referenced instrument, is provided to the director.

*Utilities* means all services necessary for a property to have lawful heat, lighting, wastewater, and potable hot and cold water, in accordance with habitability standards.

**Sec. 34-834. - Duties of permit holder.**

Upon receipt of a permit issued by the director, in order to retain the permit, the permit holder shall:

EXHIBIT 1

(1)     Comply with all provisions of this article and the rules and regulations promulgated by the director, as such provisions, rules and regulations may be amended from time to time, and also each and every condition and requirement endorsed upon such permit or any renewal thereof issued, as such conditions and requirements may be amended by the director;

(2)     Immediately notify the director if a life-threatening violation may exist because of an emergency such as a fire, flood, extended interruption of electrical or water service, sewage backup, gross insanitary occurrence or condition, or other circumstance that may endanger health;

(3)     Subject to subsection 34-846(d), allow representatives of the director access to the rental property for inspections and in emergencies when a life threatening violation may exist;

(4)     Comply with directives of the director including time frames for corrective actions specified in inspection reports, notices, orders, warnings, and other directives issued by the director in regard to the permit holder's rental property, or in response to community emergencies;

(5)     Accept notices issued and served by the director according to law;

(6)     Be subject to the regulatory, civil, injunctive, and criminal remedies authorized in law for failure to comply with this article or a directive of the director, including time frames for corrective actions specified in inspection reports, notices, orders, warnings, and other directives; and

(7)     Submit annual permit review documentation and health and safety inspection report that is in compliance with the requirements of the director with appropriate fee as required by director. No person shall submit a materially inaccurate inspection report.

(8)     Within 60 days following: a. Issuance of a permit or permit renewal by the director; and b. The commencement of a new tenancy, either: 1. Furnish a full copy of the permit to each tenant subject to the permit, or 2. For the full remaining term of the permit period post a full copy of the permit at the rental property in a conspicuous location reasonably calculated to come to the attention of each tenant subject to the permit.

(9)     Include a disclosure, in a form prescribed by the Director of the Civil Rights and Equal Opportunity Department, to all prospective tenants that informs prospective tenants of their rights against discrimination as defined in both the tenant's bill of rights and Chapter 38 of the Code of Ordinances entitled "Civil Rights" Sections 38-1, 38-23, 38-101 and 38-105, and Code of Ordinances Section 34-857.

**Sec. 34-837. - Fees.**

EXHIBIT 1

(a) *Initial application fee.* A fee of $20.00 for each rental property is due at time of submission of the initial application for the permit.

(b) *Rental property annual permit fee.* A fee of $20.00 per rental unit is due annually. All permits are annual permits and shall be valid from January 1 through December 31. The fee is due at the time of submission of the initial or renewal application for a permit, which shall be on or before December 31.

(c) *Inspection fee.* No fee shall be assessed for an initial inspection of a rental unit a re-inspection fee of $150.00 shall be assessed for the re-inspection of the first rental unit; a $100 re-inspection fee shall be assessed at the time of the re-inspection for every additional unit requiring re-inspection. The re-inspection fee shall be due 30 days after the director gives written notice to the permit holder as provided in section 34-866.

(d) *Payment of fee.* All fees must be paid when due by the permit holder.

(e) *Late fee.* A late fee equal to ten percent of the amount due shall be assessed per month for fees not paid when due. The director is authorized to create a fund using fees generated from late fees to assist tenants with tenant relocation costs.

(f) *Permit renewals.* Permit holders that have not paid fees within 90 days of the date due may be subject to permit suspension until all fees have been paid.

(g) *Reinstatement fees.* For properties that have had a permit suspended following action taken by a provision of this article, a $300.00 reinstatement fee shall be assessed to reinstate the permit.

(h) *Special Probationary Status cost assessment.* For properties that have a permit placed on Special Probationary Status, an up to $500.00 payment shall be required to cover the costs of the City-approved classes on housing discrimination, the Special Probationary Status program, and investigative costs of Section 38-105 investigations.

(i) *CPI adjustments.* The director shall have the authority to annually adjust all fees in this article to reflect an increase equal to an increase in the consumer price index (all items/all urban consumers/Kansas City, Missouri-Kansas) published by the United States Department of Labor, Bureau of Labor Statistics. The authorization for the director to annually increase fees shall be cumulative and the failure of the director to raise fees in any one year shall not waive the director's authority to cumulatively raise fees by the consumer price index for missed years. The adjustments, if made, shall be made by the director of health in conjunction with the adoption of the annual budget of the city.

(j) *Renewals.* The director will renew an existing permit once a permit fee has been received by the director regardless of whether an inspection has occurred. Suspended permits shall not be renewed until all conditions that warranted the suspension are abated. Revoked permits cannot be renewed.

EXHIBIT 1

(k) *Refunds.* There shall be no refund of any fee paid pursuant to this section.

(l) Remaining funds for childhood lead prevention and tenant relocation. One hundred percent of any funds remaining after administrative program expenses shall be allocated to the prevention of childhood lead poisoning and relocation costs for low-income tenants required by the director to move out of their home due to health or safety threats.

**Sec. 34-855. - Notice of suspension; with prior warning.**

Pursuant to this article and with prior warning, the director may suspend a permit for reasons such as:

(1)     Nonpayment of fees;

(2)     Denial of access to the director;

(3)     Life-threatening violations;

(4)     Violations still in existence at a third re-inspection; or

(5)     The director determines that a permit holder or representative at the inspection is in violation of the city Code of Ordinances.

(6)     The director has received notice from the Civil Rights Enforcement Office that, after an investigation, the Civil Rights Enforcement Office has found that a permit holder is in violation of the city Code of Ordinances.

**Sec. 34-856. - Notice of suspension; without prior warning.**

The director may suspend a permit by providing written notice to the permit holder or representative at the inspection, without prior warning, notice of hearing, or a hearing, if and when:

(1)     The director determines through inspection or other means as specified in this article, that a life-threatening violation or a life-threatening violation exists;

(2)     The director determines that permit holder or representative at the inspection is ignoring or refusing to correct a health-hazard violation that can be quickly remediated;

(3)     The director determines that permit holder or representative at the inspection is in violation of the city Code of Ordinances;

(4)     The permit holder or representative interferes with the director in the performance of his or her duties.

EXHIBIT 1

(5)     The director has received notice from the Civil Rights Enforcement Office that, after an investigation, the Civil Rights Enforcement Office has found that a permit holder is in violation of the city Code of Ordinances.

**Sec. 34-857. - Term of suspension; reinstatement of permit.**

(a) A suspension pursuant to clauses (1) through (5) of section 34-855 or 34-856 of this code shall remain in effect until the conditions cited in the notice of suspension no longer exist and their elimination has been confirmed by the director through re-inspection or other means as appropriate. The director may initiate any one, or a combination of, compliance methods that include, but are not limited to:

(1)     Holding a regulatory conference with the permit holder; and/or

(2)     Placing the rental property on probation to allow for a reinstatement of permit with corrective action plan;

(b) When the director issues a suspension pursuant to clause (6) of section 34-855 of this code, the director shall declare that the permit holder's rental permits within the affected rental property are placed on Special Probationary Status and shall notify the permit holder. This Special Probationary Status shall remain in effect until the permit holder has completed a corrective action plan as defined by the director of the Civil Rights Enforcement Office. Any corrective action plan shall include, but not be limited to:

(1)     Completing a mandatory three-hour class regarding housing discrimination laws, which shall be made available by the City or a third-party approved by the City, as necessary.

(2)     Paying a Special Probationary Status program cost assessment as defined by this chapter.

(3)     Paying a permit reinstatement fee as defined by this chapter.

(c) While a permit is on Special Probationary Status, the permit holder shall agree to do the following:

(1)     Refund application fees, or waive fees for renewing a previously submitted application, for prospective tenants who, as a result of violations of section 38-105 of this code, had their rental application denied

(2)     Submit all rental advertisements for any rental units within the affected rental property to the Civil Rights Enforcement Office prior to publication

(3)     Maintain a record of all denied rental applications in the affected dwelling and share them with the Civil Rights Enforcement Office upon request

21

EXHIBIT 1

(4)     Notify all prospective tenants of the affected rental property that the permit for the property is on Special Probationary Status pending completion of a corrective action plan

(5)     Refrain from initiating eviction proceedings against any tenant living in the affected rental property who, as a result of violations of section 38-105 of this code, were denied the opportunity to renew their original lease unless otherwise required to do so by law

(6)     Comply with all other obligations of existing leases, contracts, covenants, and other agreements with current tenants.

Section 3.  That the City Manager is directed to:

(a)     Provide notification of the substantive terms of this ordinance to tenants, landlords, and other interested parties through, among other things, City websites, city government television and video services, notices on City property, City communications, community events, and to conduct outreach with neighborhood associations, apartment buildings and tenant unions. This effort will exist in perpetuity and will not be exclusive to the first year of the ordinance's passage.

(b)     Identify an annual source of funding to implement the provisions of this ordinance, including establishing a reasonable number of investigator positions within the Civil Rights and Equal Opportunity Department.

(c)     Affix the substantive changes made by this Ordinance as an addendum to the Tenant Bill of Rights.

Section 4.  That sections 1 and 2 of this Ordinance shall have an effective date of August 1, 2024. Section 3 shall become effective in accordance with Section 503(b)(1) of the City Charter.

Section 5. That the City Manager is directed to negotiate an intergovernmental agreement with the Housing Authority of Kansas City to establish a Landlord Risk Mitigation Fund Pilot Program (the "Program"). The Program shall include mitigation provisions as recommended based on staff research of the best practice policies of peer programs across the country

Section 6. That the City of Kansas City, Missouri shall fund the Program in amount not to exceed $1,000,000.

Section 7. That the appropriation in the following account of the General Fund is reduced by the following amount:

24-1000-179990-B          Contingent Appropriation          $1,000,000.00

Section 8.  That the sum of $1,000,000.00 is hereby appropriated from the Unappropriated Fund Balance of the General Fund, Fund No. 1000, to the following account:

EXHIBIT 1

| 24-1000-552516-B | Landlord Programs | $1,000,000.00 |

Section 9.  That the Director of Housing is designated requisitioning authority for Account No. 1000-552516.

Section 10. Program Review. The city council shall review the Program provisions and requirements annually and determine whether to maintain, modify, or terminate the Program.

Section 11. *Landlord Liaison.* There shall be established within the Housing Department a Landlord-Tenant Liaison who will provide assistance and educational resources applying for reimbursement from the Program. The liaison shall:

(a)   Provide assistance in navigating requirements of voucher programs;

(b)   Provide assistance in applying for Program funds;

(c)   Fulfill other duties as assigned by the Director.

I hereby certify that there is a balance, otherwise unencumbered, to the credit of the appropriation to which the foregoing expenditure is to be charged, and a cash balance, otherwise unencumbered, in the treasury, to the credit of the fund from which payment is to be made, each sufficient to meet the obligation hereby incurred.

Tammy L. Queen
Director of Finance

Approved as to form:

Joseph A. Guarino
Senior Associate City Attorney

Authenticated as Passed

Quinton Lucas, Mayor

Marilyn Sanders, City Clerk
JAN 2 5 2024

Date Passed

23

EXHIBIT 1