IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| KENNEDY F. JONES, *et al.*, | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:24-cv-00649-WBG |
| | ) | |
| CITY OF KANSAS CITY, MISSOURI, | ) | |
|     Defendant. | ) | |

## SUGGESTIONS IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

TABLE OF CONTENTS

I. Overview ................................................................................................................ 1

II. Argument and authorities ..................................................................................... 2

    A. Legal standard ................................................................................................ 2

    B. Likelihood of success on the merits ............................................................... 2

        1. Violation of the Fourth and Fourteenth Amendments ............................... 2

        2. Violation of the Supremacy Clause ........................................................... 9

    C. Other factors — irreparable harm, balance of the equities, and public interest ... 14

III. Conclusion ........................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Amalgamated Transit Union, Loc. 1277, AFL-CIO v. Sunline Transit Agency*, 663 F. Supp. 1560 (C.D. Cal. 1987) .................................................................................................................... 15
*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015) ...................................................... 10
*Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25 (1996) ................................................. 10
*California v. Ciraolo*, 476 U.S. 207 (1986) ........................................................................................ 3
*Camara v. Mun. Ct. of City & Cnty. of San Francisco*, 387 U.S. 523 (1967) ............................ 3, 4, 8
*Cigna Corp. v. Bricker*, 103 F.4th 1336 (8th Cir. 2024) .................................................................... 2
*Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504 (1992) ....................................................................... 10
*City of Los Angeles, Calif. v. Patel*, 576 U.S. 409 (2015) ............................................................. 3, 4
*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) ......................................................... 11
*D.M. by Bao Xiong v. Minn. State High Sch. League*, 917 F.3d 994 (8th Cir. 2019) ...................... 15
*Dearmore v. City of Garland*, 400 F. Supp. 2d 894 (N.D. Tex. 2005) .............................................. 4
*Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606 (2012) ................................................. 10
*Ex parte Young*, 209 U.S. 123 (1908) .............................................................................................. 10
*Forest Park II v. Hadley*, 336 F.3d 724 (8th Cir. 2003) ...................................................... 11, 12, 14
*Int'l Paper Co. v. Ouellette*, 479 U.S. 481 (1987) ........................................................................... 11
*Katz v. United States*, 389 U.S. 347 (1967) ....................................................................................... 3
*Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963) ....................................................................... 6
*Lankford v. Sherman*, 451 F.3d 496 (8th Cir. 2006) .................................................................. 9, 10
*Mapp v. Ohio*, 367 U.S. 643 (1961) ................................................................................................... 3
*Marshall v. Barlow's, Inc.*, 436 U.S. 307 (1978) ............................................................................... 3
*MS Rentals, LLC v. City of Detroit*, 362 F. Supp. 3d 404 (E.D. Mich. 2019) .................................... 6
*Nken v. Holder*, 556 U.S. 418 (2009) .............................................................................................. 15
*People by James v. Commons West, LLC*, 194 N.Y.S.3d 451 (N.Y. Sup. Ct. 2023) ................... 7, 8, 9
*Planned Parenthood of Minn., Inc. v. Citizens for Cmty. Action*, 558 F.2d 861 (8th Cir. 1977) ........ 15
*Pund v. City of Bedford, Ohio*, 339 F. Supp. 3d 701 (N.D. Ohio 2018) ............................................ 4
*Schneckloth v. Bustamante*, 412 U.S. 218 (1973) ......................................................................... 3, 4
*See v. City of Seattle*, 387 U.S. 541 (1967) ....................................................................................... 3
*Sokolov v. Village of Freeport*, 420 N.E.2d 55 (N.Y. 1981) ................................................... 4, 5, 7, 8
*Thompson v. City of Oakwood, Ohio*, 307 F. Supp. 3d 761 (S.D. Ohio 2018) ............................... 4, 5
*United States v. Farnell*, 701 F.3d 256 (8th Cir. 2012) ..................................................................... 3
*United States v. Ward*, 448 U.S. 242 (1980) ..................................................................................... 6
*Wilson v. City of Cincinnati, Ohio*, 346 N.E.2d 666 (Ohio 1976) ..................................................... 5

**Statutes**

42 U.S.C. § 1437f ................................................................................................................. 13
42 U.S.C. § 1983 ............................................................................................................ 2, 9, 15

**Constitutional Provisions**

U.S. CONST. AMEND. IV .............................................................................................. passim
U.S. CONST. AMEND. XIV ................................................................................................ 1, 3
U.S. CONST. ART. VI, CL. 2 ............................................................................................... 1, 9

**Other Authorities**

H.R. Rep. 100-122(I) ............................................................................................................ 13
Pub. L. No. 100-242, 101 Stat. 1815, § 147 ......................................................................... 13
Pub. L. No. 101-625, 104 Stat. 4079, § 225 ......................................................................... 13
S. Rep. 105-21 ....................................................................................................................... 13

Plaintiffs Kennedy F. Jones and Stephen J. Vogel ("Plaintiffs"), by and through counsel, respectfully offer the following suggestions in support of their motion for preliminary injunction ("Motion").

I. Overview

As set forth in Plaintiffs' verified complaint ("Complaint") and Motion, both of which Plaintiffs incorporate by reference here, Plaintiffs are seeking to enjoin Defendant City of Kansas City, Missouri (the "City") from enforcing Committee Substitute for Ordinance No. 231019, as amended (the "Ordinance"). *See* Complaint, ¶¶ 1–2, 9, 66–72; Motion, p. 1. The Ordinance makes landlord participation in the federal housing choice voucher program authorized by Section 8 of the Housing Act of 1937 (the "Section 8" program) mandatory under the City's municipal laws—even though such participation is voluntary under federal law—and prescribes penalties for landlords who decline to do so. *See* Complaint ¶¶ 3–4, 15–19, 26–36; Motion, pp. 1–2.

There are at least two constitutional problems with the City's attempt to compel landlord participation in the Section 8 program. First, the Section 8 program requires landlords to enter into non-negotiable Housing Assistance Payments ("HAP") contracts that waive their search-and-seizure rights under the Fourth and Fourteenth Amendments to the United States Constitution. *See* Complaint, ¶¶ 5–6, 21–22; Motion, p. 2. So, the Ordinance unconstitutionally forces landlords who would otherwise choose not to participate in the Section 8 program to either waive their constitutional rights or face penalties if they refuse to do so. *See* Complaint, ¶¶ 4–8, 21–22, 32–36, 41–42, 48–49, 52, 56–59; Motion, p. 2. Second, the Ordinance unconstitutionally violates the Supremacy Clause of Article VI of the United

1

States Constitution because it actually conflicts with and is preempted by federal law that makes Section 8 participation voluntary. *See* Complaint, ¶¶ 3-4, 15-19, 53, 61-65; Motion, pp. 2-3.

For the reasons below, Plaintiffs are likely to prevail on one or both of these constitutional issues, and are therefore likely to prevail on the merits of their claims for declaratory judgment, relief under 42 U.S.C. § 1983, and/or federal preemption. Further, they will suffer irreparable harm in the absence of an injunction, and the balance of the equities and the public interest weigh in favor of an injunction.

## II. Argument and authorities

### A. Legal standard

A preliminary injunction is an equitable remedy, the primary function of which is to preserve the status quo until a court can grant full relief after a final hearing. *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1342 (8th Cir. 2024). A court may grant a preliminary injunction when the movant shows: (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities between the parties tips in his favor; and (4) that an injunction is in the public interest. *Id.* While no single factor is determinative, probability of success is the most significant factor. *Id.*

### B. Likelihood of success on the merits

#### 1. Violation of the Fourth and Fourteenth Amendments

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or

2

affirmation, and particularly describing the place to be searched, and the
persons or things to be seized.

U.S. CONST. AMEND. IV; *see also Mapp v. Ohio*, 367 U.S. 643, 654–55 (1961) (applying Fourth Amendment to the states through the Due Process clause of the Fourteenth Amendment).

The basic purpose of the Fourth Amendment is to safeguard the privacy and security of individuals against arbitrary invasions by government officials. *Camara v. Mun. Ct. of City & Cnty. of San Francisco*, 387 U.S. 523, 528 (1967). The Fourth Amendment protects places and information in which the person claiming protection has a reasonable expectation of privacy. *See California v. Ciraolo*, 476 U.S. 207, 211 (1986) (citing *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)). This includes commercial property and business records as well as private residences and personal documents, and applies to administrative inspections in addition to criminal investigations. *See City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 419–21 (2015); *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 311–13 (1978); *See v. City of Seattle*, 387 U.S. 541, 543–45 (1967). "[T]he Fourth Amendment requires adherence to judicial processes … searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject to only a few specifically established and well-delineated exceptions." *Katz*, 389 U.S. at 357 (citations and quotation marks omitted).

One exception to the Fourth Amendment's warrant requirement is consent by the person subject to the search. *Id.* at 358, n.22; *United States v. Farnell*, 701 F.3d 256, 262–63 (8th Cir. 2012). Consent to a search is valid if it is given freely and voluntarily under the totality of the circumstances. *Schneckloth v. Bustamante*, 412 U.S. 218, 227 (1973). If, on the other hand,

3

the purported consent was the product of duress or coercion, express or implied, then it is "no more than a pretext for the unjustified [government] intrusion against which the Fourth Amendment is directed." *Id.* at 228.

Courts have consistently held that when a person faces criminal penalties if he refuses consent to a search, any purported consent given in that context is coerced and invalid. *See, e.g., Dearmore v. City of Garland*, 400 F. Supp. 2d 894, 902–03 (N.D. Tex. 2005) (consent to warrantless inspections of rental properties pursuant to ordinance was invalid where landlord would face criminal penalties if consent were refused); *Pund v. City of Bedford, Ohio*, 339 F. Supp. 3d 701, 711–16 (N.D. Ohio 2018) (same). Laws that criminalize the refusal of a warrantless search—without any opportunity for pre-compliance review by a neutral party—are facially unconstitutional. *See Patel*, 576 U.S. at 417–21; *Thompson v. City of Oakwood, Ohio*, 307 F. Supp. 3d 761, 774–75 (S.D. Ohio 2018).

This principle is readily apparent when a person faces criminal penalties as a direct consequence of his refusal to consent to a warrantless search. *See, e.g., Patel*, 576 U.S. at 412–13, 419–21 (hotel operator's failure to make guest records available for inspection was misdemeanor punishable by fines and jail time); *Camara*, 387 U.S. at 525–27 (tenant criminally prosecuted for refusing to permit municipal health inspector to make warrantless inspection of property). But importantly, it also applies when the criminal penalties are indirect. For example, in *Sokolov v. Village of Freeport*, 420 N.E.2d 55 (N.Y. 1981), the village enacted an ordinance requiring that a landlord obtain a rental permit before leasing out residential rental property. *Id.* at 56. As part of obtaining and renewing a rental permit, the

4

landlord would be required to submit the property to inspection by the village. *Id.* If the landlord leased the property without obtaining a permit, he would be subject to criminal penalties. *Id.* at 56–57.

Owners of rental property in the village raised a Fourth Amendment challenge to the ordinance, arguing that it coerced them into consenting to warrantless inspections in violation of their constitutional rights. *Id.* at 56. The New York Court of Appeals agreed with the rental property owners:

> [The village] argues that failure to consent to a warrantless inspection is not punishable under the ordinance, but only the renting of the property without a permit. The village thus infers that any searches which are made under the ordinance are made with the consent of the owner. We find this line of reasoning to be unpersuasive, for through an indirect method the property owner is being penalized for his failure to consent to a warrantless search. In this instance the property owner's consent is not voluntarily given ... as it is clearly a product of coercion. A property owner cannot be regarded as having voluntarily given his consent to a search where the price he must pay to enjoy his rights under the Constitution is the effective deprivation of any economic benefit from his rental property.
>
> Additionally, we note that the village may not compel the owner's consent to a warrantless inspection upon the theory that these searches are a burden which a property owner must bear in exchange for the right to open his property to the general public for rental. It is beyond the power of the State to condition an owner's ability to engage his property in the business of residential rental upon his forced consent to forego certain rights guaranteed to him under the Constitution .... The Supreme Court has held, and we think properly so, that "the right to continue the exercise of a privilege granted by the state cannot be made to depend upon the grantee's submission to a condition prescribed by the state which is hostile to the provisions of the federal Constitution" ....

*Id.* at 57 (citations omitted); *see also Thompson*, 307 F. Supp. 3d at 774–75 (citing *Wilson v. City of Cincinnati, Ohio*, 346 N.E.2d 666 (Ohio 1976)) (where ordinance required property owners to obtain certificate of occupancy before selling property, which in turn required owners to

5

submit to warrantless inspection of property, ordinance was invalid because it criminalized selling of property without permit); *MS Rentals, LLC v. City of Detroit*, 362 F. Supp. 3d 404, 408–10, 416–18 (E.D. Mich. 2019) (where ordinance required rental property owners to obtain and maintain certificates of compliance, which in turn required owners to submit to warrantless inspections of property, ordinance was invalid because it penalized owners with non-criminal "blight violations" if they failed to obtain or maintain certificates of compliance).

Here, landlords who refuse to waive their Fourth Amendment rights by entering into HAP contracts, and so decline to accept Section 8 vouchers as payment for rent, are subject to the fine prescribed in the Ordinance. *See* Complaint, ¶¶ 31–34. This fine may in itself be a criminal penalty. *See United States v. Ward*, 448 U.S. 242, 248–49 (1980) (citing *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963)) (whether particular statutorily-defined penalty is civil or criminal is a matter of statutory construction). Moreover, by defining source-of-income discrimination as an act of housing discrimination and making it unlawful for rental permit holders to engage in any acts of housing discrimination, the Ordinance also directly subjects permit-holding landlords to indisputably criminal penalties, including jail time, if they decline to waive their Fourth Amendment rights and accept Section 8 vouchers. *See* Complaint, ¶ 36.

On top of these direct penalties, the Ordinance also puts the rental permits of landlords who decline to waive their Fourth Amendment rights and accept Section 8 vouchers at risk of suspension or revocation. *See* Complaint, ¶¶ 35–36. And because it is unlawful for landlords to rent out their properties if they fail to obtain or maintain required rental permits,

6

they are subject to indirect criminal penalties for declining to waive their Fourth Amendment rights. *See* Complaint, ¶ 36. Just as in *Sokolov*, "[a] property owner cannot be regarded as having voluntarily given his consent to a search where the price he must pay to enjoy his rights under the Constitution is the effective deprivation of any economic benefit from his rental property." 420 N.E.2d at 57.

At least one other court has found that a state source-of-income discrimination statute, substantially similar to the Ordinance, was invalid because it violated landlords' rights under the Fourth Amendment. In *People by James v. Commons West, LLC*, 194 N.Y.S.3d 451 (N.Y. Sup. Ct. 2023), the court considered New York's Human Rights Law that makes it an unlawful discriminatory practice to refuse to rent housing to any person based on their "lawful source of income," specifically defined to include Section 8 vouchers. *Id.* at 452. The court first found that the statute had the effect of making landlord participation in the Section 8 program mandatory under state law, even though the program is voluntary under federal law:

> [A]s set forth above [regarding HAP contracts], a landlord cannot accept a Section 8 housing voucher as payment for rent without agreeing to participate in Section 8, which, in turn, requires that the landlord authorize warrantless searches of the rental property and the landlord's records. … Thus, although Section 8 is a voluntary program at the federal level, the source of income protections provided by the Human Rights Law would necessarily compel a landlord to participate in Section 8 to obtain reasonable rent for an apartment rented or leased to a person who is eligible to receive Section 8 assistance.

*Id.* at 453–54 (citations omitted).

The court then turned to the question of whether mandatory Section 8 participation under the state's source-of-income discrimination statute violated landlords' rights under the

7

Fourth Amendment, noting that this was an issue of first impression. *Id.* at 454. The court concluded that such mandatory Section 8 participation *did* violate the Fourth Amendment:

> In 1967, the United States Supreme Court [in *Camara*] established the principle that administrative searches of buildings to ensure compliance with a municipal housing code are significant intrusions upon the interests protected by the Fourth Amendment …. The New York Court of Appeals [in *Sokolov*], relying largely on *Camara*, specifically held that laws which authorize inspections of residential rental properties without either the consent of the owner or a valid search warrant violate the Fourth Amendment, and specifically noted that a property owner cannot be indirectly compelled to consent to a search …. Stated another way, *Sokolov* stands for the proposition that a law may not coerce property owners into consenting to warrantless inspections in derogation of their constitutional rights by conditioning their ability to rent real property on providing such consent, which is precisely the effect of the source of income antidiscrimination statute. Thus, by requiring landlords to accept Section 8 vouchers, the source of income antidiscrimination statute necessarily compels landlords to consent to warrantless searches of their properties, in violation of the Fourth Amendment.
>
> Similarly, the source of income antidiscrimination statute further violates the Fourth Amendment by compelling landlords to consent to warrantless searches of their records. [The state's] argument that "there is no violation of the Fourth Amendment regarding the inspection of [landlords'] records *when entering into a HAP contract*" is unavailing …. This argument assumes the conclusion—that consent to such searches is given when entering into a HAP contract—and overlooks the determinative factor—that the source of income antidiscrimination statute improperly compels landlords to waive their Fourth Amendment rights by requiring them to accept the HAP contract's terms. Also unavailing is [the state's] argument that landlords have no reasonable expectation of privacy in their business records. There is no reasonable expectation of privacy in records maintained by closely regulated industries, especially records specifically prepared in compliance with regulatory requirements …. However, this exception to the reasonable expectation of privacy in business records applies only to businesses in industries which "have such a history of government oversight that no reasonable expectation of privacy could exist," such as liquor sales, firearms dealing, mining, or operating an automobile junkyard …. Other than Section 8, petitioner has not identified any law or regulation requiring landlords to maintain specific business records, and renting residential apartment units is not a closely regulated industry ….

*Id.* at 454–55 (emphasis in original; citations omitted).

For these same reasons, the Ordinance is unconstitutional and invalid because it forces landlords to either waive their Fourth Amendment search-and-seizure rights or risk bearing the consequences of violating the Ordinance, which include the threat of fines, jail time, and the suspension or revocation of their rental permits. Moreover, because Plaintiffs are landlords with rental properties within City limits and have indicated their intent to continue declining to participate in the Section 8 program, which conduct is proscribed by the Ordinance, there is a credible threat of prosecution by the City under the Ordinance and an actual or imminent threat to Plaintiffs' constitutional rights. *See* Complaint, ¶¶ 38, 42, 44, 49, 54, 58–59. Therefore, Plaintiffs are likely to succeed on the merits of their declaratory judgment and 42 U.S.C. § 1983 claims.

### 2. Violation of the Supremacy Clause

The Supremacy Clause of Article VI of the United States Constitution provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. CONST. ART. VI, CL. 2.

Under this clause, state and local laws that interfere with, or are contrary to, the laws of Congress are invalid as preempted by federal law. *See Lankford v. Sherman*, 451 F.3d 496, 509–10 (8th Cir. 2006). Although the Supremacy Clause is not in itself a source of any federal rights, courts are entitled in the exercise of their equitable powers to enjoin unconstitutional actions by government officials, including actions that are unconstitutional because they are

9

preempted by federal law. *See id.*; *see also Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015). This is especially true where litigants are seeking prospective equitable protection from an injurious and preempted state or local law under which they face prosecution by governmental authorities. *See id.* at 338–39 (Sotomayor, J., dissenting) (noting that "the availability of prospective relief of the sort awarded in *Ex parte Young* [209 U.S. 123 (1908)]" gives "life to the Supremacy Clause"); *see also Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 565 U.S. 606, 620 (2012) (Roberts, C.J., dissenting) (noting that cases such as *Ex parte Young* involve "the pre-emptive assertion in equity of a defense that would otherwise have been available in the State's enforcement proceedings at law").

The United States Supreme Court has recognized three different forms of federal preemption: (1) express preemption, in which Congress's preemptory intent is explicitly stated in the statute's language; (2) field preemption, in which federal law so wholly occupies a legislative field as to make reasonable the inference that Congress left no room for the states to supplement it; and (3) conflict preemption, in which a particular state or local law actually conflicts with federal law. *See Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992). Under conflict preemption, an actual conflict exists where it is either physically impossible for a party to comply with both the state or local and the federal law, or where the state or local law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 31 (1996).

It is this second form of conflict preemption—"obstacle" or "frustration of purpose" preemption—that is at issue here. "What is a sufficient obstacle is a matter of judgment, to be

10

informed by examining the federal statute as a whole and identifying its purpose and intended effects ...." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000). This involves examining not only the language and structure of a statute, but also its legislative history, to glean Congressional intent. *See id.* at 377–79, and 378 n.13 (examining both statutory language and legislative history to determine that state law restricting its agencies from engaging in business with Burma stood as an obstacle to and was preempted by federal law imposing sanctions on Burma).

Further, the fact that a state or local law and a federal statute may share an ultimate goal is not dispositive to the question of whether the state or local law conflicts with the federal law. *Forest Park II v. Hadley*, 336 F.3d 724, 733 (8th Cir. 2003) (citing *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987)). Rather, a state or local law is nonetheless preempted if it interferes with the *methods* by which the federal statute was designed to reach that ultimate goal. *See Forest Park II*, 336 F.3d at 733. "The fact of a common end hardly neutralizes conflicting means ... and the fact that some [people] might be able to comply with both [the state or local law and the federal law] does not mean that the [state or local law] is not at odds with achievement of the federal decision about the right degree of pressure to employ." *Crosby*, 530 U.S. at 379–80.

In *Forest Park II*, Minnesota state law required that owners of federally-subsidized low-income housing comply with certain additional conditions (beyond those required under federal law) before prepaying their subsidized mortgages and withdrawing from the federal program. 336 F.3d at 730. The Eighth Circuit found unpersuasive the state's arguments that there was no actual conflict between the state and federal laws because (1) it was possible for

11

program participants to comply with both sets of statutes, and (2) the state statutes did not impede the goal of federal law because both had the same underlying purpose of providing low-income housing. *Id.* at 732. "While we recognize that these statements may be true, these arguments do not address the principal problem with these state statues—they fly in the face of the Constitution's Supremacy Clause." *Id.* Instead, the Eighth Circuit agreed with the property owner seeking to prepay its mortgage and withdraw from the program:

> [Owner] argues that the state statutes interfere with the federal method of implementing the housing programs. It agrees that the purpose and objective of Congress in creating housing subsidy programs was to provide low-income housing, but that within that goal was the desire to involve private developers in the process. Congress's objective in allowing for prepayment of the federally subsidized mortgages was to further the goal of encouraging private participation in the federal programs. Although Congress has taken various steps since 1968 to restrict a participant's right to prepay, the current state of the law is that a participant need only give between 150 and 270 days notice, without further permission by HUD, to prepay and withdraw from the program. A further requirement imposed by a state statute would directly interfere with Congress's original intent of offering prepayment as an incentive. Any state statute that forces owners to remain in a federally subsidized program from which Congress has authorized withdrawal would eviscerate the method Congress chose to implement the federal low-income housing scheme. Even though the state requirements ... do not appear to preclude a participant's right to prepay, in cases where owners do not comply with state law or where compliance is somehow inadequate, the state, by enforcing its own statutes, is the sole entity standing in the way of an owner's exercise of its federally granted right to prepay and withdraw from the program. Despite the fact that the federal statute and the state statute may share the same objective, the state procedures interfere with the framework created by Congress.

*Id.* at 733–34.

Here, there is no question that Congress intended landlord participation in the Section 8 program to be and remain voluntary. That intent is implicit in the statutory text of Section 8 itself, which leaves the choice of tenant to landlords. *See* 42 U.S.C. § 1437f(d)(1)(A) ("[T]he

12

selection of tenants shall be the function of the owner."). By vesting landlords with such critical decisions, Congress manifested a desire not to force landlords into contracts with every tenant who presents a Section 8 voucher. *See* Complaint, ¶ 16.

That intent is also implicit in Congress's decision to repeal the "take one, take all" and "endless lease" provisions, which had been an attempt to increase landlord participation in the Section 8 program by restricting landlords' ability to stop accepting Section 8 tenants or end Section 8 leases. *See* Pub. L. No. 100-242, 101 Stat. 1815, § 147 ("take one, take all" provision); Pub. L. No. 101-625, 104 Stat. 4079, § 225 ("endless lease" provision); H.R. Rep. 100-122(I) (discussing concerns related to lack of landlord participation in Section 8 program). When it became clear that the "take one, take all" and "endless lease" provisions were not having their intended effect, Congress's chosen fix to increase landlord Section 8 participation was to make such participation *less*—not *more*—obligatory by repealing those provisions and allowing the Section 8 program to "operate like the unassisted market as much as possible." *See* S. Rep. 105-21; *see also* Complaint, ¶¶ 17–18.

The real question before this Court is whether the Ordinance stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress by mandating landlord participation in the Section 8 program, where such participation is purposely and definitively voluntary under federal law. That answer is "yes." Although the ultimate goal of both Section 8 and the Ordinance is to increase affordable housing opportunities, their different methods of achieving that goal stand at cross-purposes. Congress has determined that "the right degree of pressure to employ" to increase affordable housing

13

availability is to let the Section 8 program remain voluntary. *See Crosby*, 530 U.S. at 379–80. The City's judgment that Section 8 program participation should be mandatory is not just "at odds with," but is directly contrary to, Congress's policy decision. *See id.*

Likewise, even more than the Minnesota state law at issue in *Forest Park II*, by eliminating landlords' choice to accept Section 8 vouchers and enter into HAP contracts, the Ordinance forces unwilling landlords into unwanted relationships with the federal government that the federal government itself may likewise not want. *See Forest Park II*, 336 F.3d at 733–34. The Ordinance "not only regulates the conduct of the citizen-owner, requiring him to [participate in the Section 8 program], but also regulates or restricts the actions of the federal government under its own federal program." *Id.* at 732. The Ordinance's procedures interfere with the voluntary Section 8 framework created by Congress. *See id.* at 734.

For these reasons, the Ordinance is unconstitutional and invalid because it actually conflicts with and is preempted by federal law that makes Section 8 participation voluntary. Moreover, because Plaintiffs have an interest in seeking equitable protection from an injurious and unconstitutional local law under which they face a credible threat of prosecution by the City, they are likely to succeed on the merits of their declaratory judgment and federal preemption claims. *See* Complaint, ¶¶ 38, 42, 44, 49, 54, 64–65.

### C. Other factors — irreparable harm, balance of the equities, and public interest

Finally, the remaining factors weigh heavily in favor of granting a preliminary injunction immediately enjoining enforcement of the Ordinance. Plaintiffs have shown that enforcement of the Ordinance poses an actual or imminent threat to their exercise of their

14

Fourth Amendment rights, which supports a finding that they will suffer irreparable harm in the absence of an injunction. *See Planned Parenthood of Minn., Inc. v. Citizens for Cmty. Action*, 558 F.2d 861, 867 (8th Cir. 1977); *Amalgamated Transit Union, Loc. 1277, AFL-CIO v. Sunline Transit Agency*, 663 F. Supp. 1560, 1564 (C.D. Cal. 1987). As to the balance of the equities and the public interest—which merge when the government is the party opposing the injunction—it is always in the public interest to prevent the violation of a party's constitutional rights. *See D.M. by Bao Xiong v. Minn. State High Sch. League*, 917 F.3d 994, 1003–04 (8th Cir. 2019) (where parties demonstrated likelihood that challenged law violated their Fourteenth Amendment equal protection rights, balance of the equities and public interest tipped in their favor); *Nken v. Holder*, 556 U.S. 418, 435 (2009) (merger).

### III. Conclusion

For the above reasons, the Court should enter a preliminary injunction immediately enjoining the City from enforcing the Ordinance and requiring the City to take all necessary actions to maintain the status quo pending final resolution of Plaintiffs' declaratory judgment, 42 U.S.C. § 1983, and federal preemption claims.

Respectfully submitted,

**LEWIS RICE LLC**

By: /s/ Robert W. Tormohlen
Robert W. Tormohlen, Mo. #40024
Douglas S. Stone, Mo. #45320
Scott A. Wissel, Mo. #49085
Ashlyn Buck Lewis, Mo. #65501
1010 Walnut, Suite 500
Kansas City, Missouri 64106
Tel:  (816) 421-2500
Fax:  (816) 472-2500
rwtormohlen@lewisricekc.com
dstone@lewisricekc.com
sawissel@lewisricekc.com
alewis@lewisricekc.com

*and*

**SEYFERTH BLUMENTHAL
 & HARRIS LLC**

Kevin J. Karpin, Mo. #45465
Bruce A. Moothart, Mo. #45517
4801 Main Street, Suite 310
Kansas City, Missouri 64112
Tel:  (816) 756-0700
Fax:  (816) 756-3700
kevin@sbhlaw.com
bruce@sbhlaw.com

*Attorneys for Plaintiffs*