# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

KENNEDY F. JONES, *et al.*,                )
      Plaintiffs,                )
                        )
v.                )      Case No. 4:24-cv-00649-RK
                        )
CITY OF KANSAS CITY, MISSOURI,                )
      Defendant.                )

## PLAINTIFFS' REPLY SUGGESTIONS IN SUPPORT
## OF MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

I. Overview .................................................................................................................. 1

II. Reply to the City's argument .................................................................................. 5

    A. The Ordinance mandates landlord participation in the Section 8 program. .......... 5

    B. The Ordinance unconstitutionally coerces landlords to waive their Fourth Amendment rights as to locations and records in which they have a reasonable expectation of privacy. .................................................................... 11

    C. The Ordinance actually conflicts with and is preempted by federal law that makes landlord participation in the Section 8 program voluntary. ..................... 18

    D. The remaining factors — the balance of the equities, the public interest, and the threat of irreparable harm to Plaintiffs — weigh in favor of granting a preliminary injunction ............................................................................... 21

III. Conclusion .............................................................................................................. 23

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. United States*, 567 U.S. 387 (2012) ............................................................... 19

*Attorney General v. Brown*, 511 N.E.2d 1103 (Mass. 1987) .......................................... 20

*Austin Apartment Ass'n v. City of Austin*, 89 F. Supp. 3d 886 (W.D. Tex. 2015) ......... 20

*Baker v. City of Portsmouth*, 2015 WL 5822659 (S.D. Ohio 2015) (unpublished opinion) ......... 16

*Borbeau v. Jonathan Woodner Co.*, 549 F. Supp. 2d 78 (D.D.C. 2008) ......................... 20

*Bucklew v. Precythe*, 587 U.S. 119 (2019) ....................................................................... 6

*Calzone v. Olson*, 931 F.3d 722 (8th Cir. 2019) ........................................................... 14

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984) .................... 18

*Cigna Corp. v. Bricker*, 103 F.4th 1336 (8th Cir. 2024) ............................................... 23

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010) ..................................... 6

*City of Los Angeles, Calif. v. Patel*, 576 U.S. 409 (2015) ....................................... passim

*Clapper v. Amnesty Intern. USA*, 568 U.S. 398 (2013) .................................................. 22

*Comm'n on Human Rights v. Sullivan Assocs.*, 739 A.2d 238 (Conn. 1999) .................. 20

*D.M. by Bao Zing v. Minn. State High Sch. League*, 917 F.3d 994 (8th Cir. 2019) ......... 22

*Dearmore v. City of Garland*, 400 F. Supp. 2d 894 (N.D. Tex. 2005) .................... 12, 13

*Doe v. Reed*, 561 U.S. 186 (2010) .................................................................................... 6

*Donovan v. Dewey*, 452 U.S. 594 (1981) ...................................................................... 15

*ESI/Emp. Sols., L.P. v. City of Dallas*, 450 F. Supp. 3d 700 (E.D. Tex. 2020) .............. 17

*Forest Park II v. Hadley*, 336 F.3d 724 (8th Cir. 2003) ................................................ 20

*Franklin Tower One v. N.M.*, 725 A.2d 1104 (N.J. 1999) ............................................. 20

*Free Speech Coal., Inc. v. Att'y Gen.*, 825 F.3d 149 (3d Cir. 2016) .............................. 15

*Hutton Park Gardens v. Town Council of Town of W. Orange*, 350 A.2d 1 (N.J. 1975) ............... 8

*Int'l Paper Co. v. Ouellette*, 479 U.S. 481 (1987) ........................................................ 20

*Johnson v. Smith*, 104 F.4th 153 (10th Cir. 2024) ................................................. 15, 16

*Klossner v. IADU Table Mound MHP, LLC*, 65 F.4th 349 (8th Cir. 2023) ..................... 22

*Loper Bright Enterprises v. Raimondo*, __ U.S. __, 144 S. Ct. 2244 (2024) .................. 18

*Marshall v. Barlow's, Inc.*, 436 U.S. 307 (1978) ......................................................... 14

*Montgomery Cnty. v. Glenmont Hills Assocs.*, 936 A.2d 325 (Md. 2007) ...................... 20

*MS Rentals, LLC v. City of Detroit*, 362 F. Supp. 3d 404 (E.D. Mich. 2019) ......... 13, 15

*Nastri v. Dykes*, 2024 WL 1338778 (2nd Cir. 2024) (unpublished opinion) ............... 22

*New York v. Burger*, 482 U.S. 691 (1987) ..................................................................... 15

*Pennell v. City of San Jose*, 485 U.S. 1 (1988) ............................................................... 8

*People by James v. Commons West, LLC*, 194 N.Y.S.3d 451 (N.Y. Sup. Ct. 2023) ......... 16

*Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992) ........................ 7

*Pund v. City of Bedford, Ohio*, 339 F. Supp. 3d 701 (N.D. Ohio 2018) .......... 11, 12, 13

*Richland/Wilkin Joint Powers Auth. V. United States Army Corps of Engineers*,
  826 F.3d 1030 (8th Cir. 2016) ...................................................................................... 21

*See v. City of Seattle*, 387 U.S. 541 (1967) .................................................................. 12

iii

*Sokolov v. Village of Freeport*, 420 N.E.2d 55 (N.Y. 1981)................................................................ 13

*Thompson v. City of Oakwood, Ohio*, 307 F. Supp. 3d 761 (S.D. Ohio 2018) .............................. 13

*United States v. Long*, 797 F.3d 558 (8th Cir. 2015) ...................................................................... 13

*United States v. Varley*, 98 F.4th 906 (8th Cir. 2024)........................................................................ 5

*Wilson v. City of Cincinnati*, 346 N.E.2d 666 (Ohio 1976)........................................................... 13

## Regulations

24 C.F.R. § 5.705 ...................................................................................................................... 6

24 C.F.R. § 982.1 ...................................................................................................................... 6

24 C.F.R. § 982.305 ................................................................................................................ 12

24 C.F.R. § 982.405 .................................................................................................................. 6

24 C.F.R. § 982.507 .................................................................................................................. 6

## Other Authorities

Code § 34-832 ........................................................................................................................ 13

Code § 34-835 ........................................................................................................................ 13

Code § 34-846 ........................................................................................................................ 13

Code § 34-849 ........................................................................................................................ 13

Code § 38-1 ............................................................................................................................ 10

Code § 38-105 ...................................................................................................................... 2, 9

S. Rep. 105-21 .................................................................................................................. 19, 21

iv

Plaintiffs Kennedy F. Jones and Stephen J. Vogel ("Plaintiffs"), by and through counsel, respectfully offer the following reply suggestions in support of their motion for preliminary injunction ("Motion"), which seeks to enjoin Defendant City of Kansas City, Missouri (the "City") from enforcing Committee Substitute for Ordinance No. 231019, as amended (the "Ordinance").

I. **Overview**

As a direct result of the City's enactment of the Ordinance, landlords with rental properties in the City are now faced with an insoluble choice when a tenant who otherwise meets the landlord's rental criteria seeks to pay rent using a federal housing choice voucher issued under Section 8 of the Housing Act of 1937 (the "Section 8" program) — either accept the voucher and with it, the waiver of their Fourth and Fourteenth Amendment rights required of all landlords participating in the Section 8 program; or refuse to accept the voucher and face the civil (and even possible criminal) penalties that the Ordinance prescribes. In effect, the Ordinance mandates landlord participation in the Section 8 program, a program that is voluntary under federal law by Congressional design. *See* Plaintiffs' verified complaint ("Complaint"), ¶¶ 3–4, 15–19, 26–36; Motion, pp. 1–2; and suggestions in support of Motion ("Suggestions in Support"), pp. 1, 7.

As Plaintiffs have explained, there at least two constitutional problems with the City's attempt to compel landlord participation in the Section 8 program. First, in order to receive Section 8 payments, landlords must enter into non-negotiable Housing Assistance Payment ("HAP") contracts with the government that require them to waive their

constitutional protections against unreasonable searches and seizures. *See* Complaint, ¶¶ 5–6, 21–22; Motion, p. 2; Suggestions in Support, pp. 1. So, the Ordinance unconstitutionally forces landlords who would otherwise choose not to participate in the Section 8 program — which they are entitled to decline under federal law — to either waive their constitutional rights or face penalties if they refuse to do so. *See* Complaint, ¶¶ 4–8, 21–22, 32–36, 41–42, 48–49, 52, 56–59; Motion, p. 2; Suggestions in Support, pp. 1–9. Second, the Ordinance unconstitutionally violates the Supremacy Clause of the Article VI of the United States Constitution because it actually conflicts with and is preempted by federal law that makes Section 8 participation voluntary. *See* Complaint, ¶¶ 3–4, 15–19, 53, 61–65; Motion, pp. 2–3; Suggestions in Support, pp. 1–2, 9–15.

The City opposes Plaintiffs' Motion on four main grounds, each without merit. First, the City claims that the Ordinance does not actually make Section 8 participation mandatory or otherwise authorize warrantless searches because nothing in the Ordinance explicitly says it does. This argument disingenuously ignores both the legislative history and the plain text of the Ordinance, which show that the City intended to mandate landlord participation in Section 8.[1] It also entirely misses Plaintiffs' point that although the Ordinance is primarily couched in terms of prohibiting source-of-income discrimination,

---

[1] As further discussed below, the City conveniently ignores the fact that among the changes to the City's Code of Ordinances (the "Code") under the Ordinance was the City's deletion of language in Code § 38-105(d)(10) which read, prior to its deletion through the enactment of the Ordinance, "In no event shall an owner be compelled to participate in an otherwise voluntary benefit or subsidy program."

its *effect* is to mandate Section 8 participation by punishing landlords who refuse to do so. The City fails to assert any meaningful rebuttal to this fact.

Second, the City argues that even if the Ordinance does mandate landlord participation in Section 8, landlords' Fourth Amendment rights are not implicated by the waivers in the HAP contract because landlords have no reasonable expectation of privacy in the leased spaces and common areas of their rental properties. But even taking that proposition as generally true, the City fails to account for the broad sweep of the HAP contract waivers, which apply not only to inspections of spaces actually leased or accessible to tenants or other third parties, but also to unoccupied dwelling units, non-public areas of premises containing leased units, and landlords' business records. Moreover, the City's contention that landlords have no reasonable expectation of privacy because the rental of residential properties is a "closely regulated" industry is unpersuasive. The "closely regulated" industry exception to the Fourth Amendment's warrant requirement is a narrow exception, and the City neither cites any case holding that it is applicable to the residential rental business, nor demonstrates that the exception should be so extended.

Third, the City contends that the Ordinance is not preempted by federal law because the federal agency that administers the Section 8 program, the U.S. Department of Housing and Urban Development ("HUD") — and "presumably" (in the City's words) Congress as well — are aware of various state and local laws prohibiting source-of-income discrimination, and yet Congress has not expressly preempted such laws. But this argument both incorrectly presumes that all state and local laws on source-of-income discrimination

3

are essentially equivalent, and misconstrues how conflict preemption works. The entire point of a conflict preemption analysis is to assess whether a *particular* law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress; whether another similar law may do so is neither here nor there. This is especially true where, as here, the conflict at issue is not that the local law is at odds with the ultimate *goal* of the federal statute, but instead that the local law impermissibly interferes with the *methods* by which the federal statute was designed to reach that goal.

Finally, the City argues that the remaining factors for a preliminary injunction — the balance of the equities, the public interest, and the threat of irreparable harm to Plaintiffs — do not weigh in Plaintiffs' favor. The City does not dispute that an injury to Plaintiffs' Fourth Amendment rights would be irreparable, but contends that Plaintiffs have not shown that the threat of injury under the Ordinance is sufficiently imminent because Plaintiffs have not demonstrated that their own properties would be eligible for Section 8. But Plaintiffs must only prove that the threatened injury is likely in the absence of an injunction, not that it is literally certain to occur. As to the balance of the equities and the public interest, the City focuses on the benefits to tenants that source-of-income discrimination laws allegedly provide, but ignores the undeniable and substantial burdens that Section 8 participation imposes on landlords.

For these reasons, and as more fully set forth below and in Plaintiffs' Complaint, Motion, and Suggestions in Support, Plaintiffs are likely to succeed on the merits of one or both of their constitutional challenges to the Ordinance. Further, they are likely to suffer

4

irreparable harm in the absence of an injunction, and the balance of the equities and the public interest weigh in favor of an injunction. Plaintiffs respectfully request that the Court enter a preliminary injunction immediately enjoining the City from enforcing the Ordinance, and for any other relief the Court deems just and proper.

## II. Reply to the City's argument

### A. The Ordinance mandates landlord participation in the Section 8 program.

The City first argues that the entire premise of Plaintiffs' complaint is incorrect because the Ordinance does not actually make Section 8 participation mandatory or otherwise improperly authorize warrantless searches. The City's rationale is that nothing in the Ordinance explicitly addresses these issues; rather, the plain language of the Ordinance "simply prohibits landlords from engaging in a variety of discriminatory conduct on the basis of a renter's source of income." But it is the City's reasoning, not Plaintiffs', that is flawed.

As an initial matter, Plaintiffs clarify what they must prove to prevail on their claims that the Ordinance is unconstitutional. Traditionally, courts and litigants have distinguished between facial and as-applied challenges to a law's constitutionality, with facial challenges claiming that the law is unconstitutional in all of its applications regardless of individual circumstances, and as-applied challenges contesting the constitutionality of a law's application under the particular facts before the court. *See United States v. Varley*, 98 F.4th 906, 909 (8th Cir. 2024). But as the United States Supreme Court has explained, the distinction between these two types of challenges

5

is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge. The distinction ... goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint.

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). The substantive rule of law necessary to establish a constitutional violation is the same for both facial and as-applied challenges. *Bucklew v. Precythe*, 587 U.S. 119, 138–39 (2019). The importance of the distinction between facial and as-applied challenges lies in the nature of the relief to be afforded, and whether such relief would apply beyond the particular circumstances of the party challenging constitutionality. *See Doe v. Reed*, 561 U.S. 186, 194 (2010).[2]

Moreover, even where a challenge to a law's validity is properly characterized as facial because it seeks to invalidate a law beyond a party's individual circumstances, the party challenging constitutionality need not prove that the law would work a constitutional violation in literally every situation that might be hypothesized. Instead, the law "is measured for consistency with the Constitution by its impact on those whose conduct it affects.... The proper focus of the constitutional inquiry is the group for whom the law is a

---

[2] The City's suggestion that Plaintiffs must show that *their* rental properties would qualify to receive Section 8 vouchers in order to mount an as-applied challenge to the Ordinance not only misconstrues the distinction between facial and as-applied challenges, it gives the false impression that there is some fixed, bright-line distinction between rental properties that would be Section 8 eligible and those that would not. HUD regulations require that Section 8 units "meet program housing quality standards" and that the rent be "reasonable." 24 C.F.R. § 982.1(a)(2). Housing quality standards are subject to variation, and may in some cases be temporarily waived by the public housing authority ("PHA") administering the program and the prospective Section 8 tenant applying for the rental unit. *See* 24 C.F.R. § 5.705(a)(3); 24 C.F.R. § 982.405(j). Further, what constitutes "reasonable" rent is determined by the PHA, and varies based on the rent of comparable unassisted units. *See* 24 C.F.R. § 982.507(b). In other words, the only way to determine with any real certainty whether a particular property would qualify to receive Section 8 vouchers is to go through the whole Section 8 qualification process with an actual applicant, at substantial administrative and financial burden to the landlord, the applicant, and the PHA.

6

restriction, not the group for whom the law is irrelevant." *City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 418 (2015) (quoting *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 894 (1992)).

In *Patel*, the United States Supreme Court struck down as facially unconstitutional under the Fourth Amendment a Los Angeles city ordinance that compelled hotel operators to maintain a register containing certain guest information and to make this register available on demand for inspection by law enforcement. 576 U.S. at 412. The City of Los Angeles argued that the ordinance could not be struck down as facially unconstitutional because such searches would never be unconstitutional in all situations, such as when police are responding to an emergency or acting under a court-ordered warrant, or when the subject of the search consents. *Id.* at 417–18. The *Patel* Court rejected this argument, reasoning that

> [i]f exigency or a warrant justifies an officer's search, the subject of the search must permit it to proceed irrespective of whether it is authorized by statute. Statutes authorizing warrantless searches also do not work where the subject of the search has consented. Accordingly, the constitutional "applications" that petitioner claims prevent facial relief here are irrelevant to our analysis because they do not involve actual applications of the statute.

*Id.* at 418–19.

Likewise, Plaintiffs here are not required to prove that every search the government might conduct on Section 8 housing or the business records of a Section 8 landlord would be unconstitutional. If such searches are conducted pursuant to a valid warrant or an authorized exception to the Fourth Amendment's warrant requirement, then the

Ordinance (mandating Section 8 participation and its attendant HAP contract waivers) simply has no application. Similarly, if such searches are conducted with a landlord's consent, whether given in a particular instance or more generally as part of the landlord's *voluntary* participation in the Section 8 program, the Ordinance has no effect.

It is only in situations where the Ordinance *would* apply to purportedly authorize an otherwise-invalid search — *i.e.*, where a landlord would have no obligation to allow a search but for his *involuntary* participation in the Section 8 program pursuant to the Ordinance — that the constitutionality of the Ordinance's application is relevant. This is the exact scenario that Plaintiffs present here. *See* Complaint, ¶¶ 37–49.

So, the threshold question for Plaintiffs' constitutional challenges to the Ordinance is whether it makes landlord participation in the Section 8 program mandatory. Put another way, when a tenant seeks to pay rent using a Section 8 voucher, is a landlord who does not wish to participate in the Section 8 program improperly forced to choose between either: (1) accepting the voucher, and along with it the waiver of his Fourth and Fourteenth Amendment rights required under the HAP contract; or (2) refusing the voucher and so risking the civil (and even possible criminal) penalties that the Ordinance prescribes?[3] As Plaintiffs have already explained, that answer is yes.

---

[3] Other ostensible options — *i.e.*, selling the rental property, or accepting the tenant at a reduced rent without signing the HAP contract and receiving the voucher payment — pose their own constitutional problems and are not viable alternatives. *Cf. Hutton Park Gardens v. Town Council of Town of W. Orange*, 350 A.2d 1, 13–15, 14 n.9 (N.J. 1975) (noting that the supposed freedom of private landlords to abandon their business if rent control regulations prevent their ability to obtain a just and reasonable return on their investment is "largely illusory," and such regulations are unconstitutionally confiscatory); *Pennell v. City of San Jose*, 485 U.S. 1, 19–24 (1988) (Scalia, J., dissenting) (reasoning that rent control ordinance that factored

The City does not attempt to rebut Plaintiffs' argument that the *effect* of the Ordinance is to make landlord participation in the Section 8 program mandatory. Instead, the City focuses on the text of the Ordinance and argues that it does not explicitly make Section 8 participation mandatory or otherwise improperly authorize warrantless searches, but merely prohibits discrimination based on a renter's source of income. As both the legislative history and the plain language of the Ordinance show, this is incorrect.

Before the present Ordinance was enacted, the Code in fact prohibited discrimination based on an applicant's lawful source of income, but also made clear that this prohibition would not require landlords to participate in an otherwise-voluntary benefit program, such as Section 8:

> (d) The following discriminatory housing practices shall be unlawful: ... (10) To refuse to rent or make any distinction or restriction for the rental of a dwelling unit solely because of the type of reasonably verifiable and lawful source on income. As used in this section, lawful source of income shall mean the lawful manner by which an individual supports themselves or their depends, including but not limited to pay, child support payments, and rental assistance from a federal, state, local or nonprofit-administered benefit or subsidy program. ***In no event shall an owner be compelled to participate in an otherwise voluntary benefit or subsidy program.***

*See* Complaint, ¶ 25 (quoting prior version of Code § 38-105(d)(10) (emphasis added)).

The Ordinance repealed the above version of Code § 38-105(d)(10), and replaced it with a provision that did not include the emphasized language expressly disavowing any requirement that a landlord participate in an otherwise-voluntary benefit program. *See*

---

tenant ability to pay into the calculation of reasonable rent would be an unconstitutional taking of private property without just compensation).

Complaint, ¶ 30. Further, under the Ordinance, "source of income" is now expressly included as a protected trait under the Code's housing discrimination provisions, and is defined as follows:

> (31) *Source of income* means the type of income or finances used by an individual to acquire goods and services for themselves, their dependents, or others. It includes reasonably verifiable and lawful income from any occupation, profession, contract, agreement, activity, any type of private, non-profit, or government assistance or payment such as federal Housing Choice Vouchers as authorized by Section 8 of the Housing Act of 1937 ... or any other form of reasonably verifiable and lawful income .... ***Source of income includes the program requirements for any type of private, non-profit, or government assistance or payment, unless compliance with such requirements would require unreasonable structural modifications to the dwelling.***

*See* Complaint, ¶ 29 (quoting current version of Code § 38-1(a)(31) (initial emphasis in original; latter emphasis added)).

The City removed the safe-harbor provision that previously existed for landlords who did not choose to participate in otherwise-voluntary programs such as Section 8, and now explicitly defines source of income to *include* the program requirements for such no-longer-voluntary programs. There is simply no reasonable interpretation of these changes to the Code under the Ordinance other than to conclude that the City intended to, and did, make landlord participation in the Section 8 program mandatory when presented with a tenant relying on a Section 8 voucher.

The Ordinance mandates landlord participation in the Section 8 program. The City's arguments otherwise are without merit.

**B. The Ordinance unconstitutionally coerces landlords to waive their Fourth Amendment rights as to locations and records in which they have a reasonable expectation of privacy.**

Next, the City argues that the Ordinance does not violate Plaintiffs' Fourth Amendment rights because they have no reasonable expectation of privacy in their residential rental property. For purposes of their Motion only, Plaintiffs take as true that they do not have a reasonable expectation of privacy in certain areas of their rental properties that the government may to search as part of its administration of the Section 8 program — namely, residential units actually leased to and presently occupied by tenants, and common areas accessible to tenants and other authorized third parties. *But see Pund v. City of Bedford, Ohio*, 339 F. Supp. 3d 701, 716 (N.D. Ohio 2018) (stating that "landlords, absent tenant intervention, have a constitutional right to privacy in both their occupied and unoccupied rental units").

But as discussed above, the Ordinance's constitutionality is not measured against these applications, because without a reasonable expectation of privacy, searches of such areas would be valid regardless of the application of the Ordinance. It is the application of the Ordinance to purportedly allow searches of locations and records in which landlords *do* maintain a reasonable expectation of privacy that is unconstitutional. Here, the HAP contract permits searches not only of tenant-occupied dwelling units and common areas, but also *un*occupied dwelling units, non-public areas of premises containing leased units, and landlords' business records:

- "The PHA may inspect the contract unit and premises at such times as the PHA determines necessary, to ensure that the unit is in accordance with the HQS [housing quality standards]." *See* Complaint Ex. 2, Part B, ¶ 3(e).

- "The owner must provide any information pertinent to the HAP contract that the PHA or HUD may reasonable require." *See* Complaint Ex. 2, Part B, ¶ 11(a).

- "The PHA, HUD, and the Comptroller General of the United States shall have full and free access to the contract unit and the premises, and to all accounts and other records of the owner that are relevant to the HAP contract, including the right to examine or audit the records and make copies." *See* Complaint Ex. 2, Part B, ¶ 11(b).

- "The owner must grant such access to computerized or other electronic records, and to any computers, equipment or facilities containing such records, and must provide any information or assistance needed to access the records." *See* Complaint Ex. 2, Part B, ¶ 11(c).

- "Contract unit. The housing unit rented by the tenant with assistance under the program." *See* Complaint Ex. 2, Part C, ¶ 20.

- "Premises. The building or complex in which the contract unit is located, including common areas and grounds." *See* Complaint Ex. 2, Part C, ¶ 20.

*See also* 24 C.F.R. § 982.305(b) (requiring initial inspection of contract unit to occur before commencement of lease term).

In all of these circumstances, landlords maintain a reasonable expectation of privacy, and so the Fourth Amendment applies. *See, e.g.*, *Pund*, 339 F. Supp. 3d at 714–16 (unoccupied rental units); *Dearmore v. City of Garland*, 400 F. Supp. 2d 894, 901–04 (N.D. Tex. 2005) (unoccupied rental units); *See v. City of Seattle*, 387 U.S. 541, 542–45 (1967) (non-public portions of commercial premises); *United States v. Long*, 797 F.3d 558, 565 (8th

12

Cir. 2015) (non-public portions of commercial premises); *cf. Patel*, 576 U.S. at 414, 419–21 (business records).

The City also argues that regardless of whether the Ordinance compels landlords to submit to inspections under the Section 8 program, landlords already "voluntarily" consent to such inspections pursuant to the City's Healthy Homes ordinances, under which they must submit their residential rental units to inspection to obtain the required rental permits. *See* Code §§ 34-832, 34-835, and 34-846.

There are several critical flaws to this argument. First, it presumes that inspections purportedly authorized under the Healthy Homes ordinances are themselves constitutional. While the constitutionality of the Healthy Homes program is not directly at issue here, a number of courts have found that similar programs conditioning a landowner's right to rent or sell residential property on his consent to warrantless searches violate the Fourth Amendment. *See, e.g., Pund*, 339 F. Supp. 3d at 716; *Dearmore*, 400 F. Supp. 2d at 904; *MS Rentals, LLC v. City of Detroit*, 362 F. Supp. 3d 404, 416–17 (E.D. Mich. 2019); *Thompson v. City of Oakwood, Ohio*, 307 F. Supp. 3d 761, 774–75 (S.D. Ohio 2018); *Sokolov v. Village of Freeport*, 420 N.E.2d 55, 57–58 (N.Y. 1981); *Wilson v. City of Cincinnati*, 346 N.E.2d 666, 670–71 (Ohio 1976).

Second, unlike the Section 8 program, Healthy Homes does contain a provision that appears to allow landowners to refuse inspection and require the City to seek a warrant. *See* Code § 34-849(c). And third, the inspections ostensibly authorized under Section 8 are much broader than those contemplated under the Healthy Homes program, with respect to

13

both the timing and the scope of the inspections. So, it cannot be said that landlords consent to the full panoply of warrantless inspections under Section 8 merely because they may submit to Healthy Homes inspections.

Finally, the City argues at length that landlords have no reasonable expectation of privacy in their residential rental properties because the rental of residential properties is a "closely regulated" industry. The United States Supreme Court has cautioned that this is a narrow exception to the Fourth Amendment's warrant requirement. *Patel*, 576 U.S. at 424–25 (citing *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313 (1978)). Since 1970, the Court has recognized the exception in only four contexts: liquor sales, firearms dealing, mining, and running an automobile junkyard. *Patel*, 576 U.S. at 424.

As the *Patel* Court observed, unlike the hotel industry at issue in that case, the industries that it had held to be closely regulated all inherently involved a "clear and significant risk to the public welfare." *Id.* Inherent dangerousness of an industry is at least a factor, if not an outright condition, of finding that an industry is "closely regulated" and therefore subject to a reduced expectation of privacy. *See Calzone v. Olson*, 931 F.3d 722, 724 (8th Cir. 2019) (citing *Patel*). In any event, *Patel* made clear that the relevant inquiry in determining whether an industry is "closely regulated" is not the pervasiveness of regulation itself, but whether the regulation is of such character as to put a business owner on notice that there is a reduced expectation of privacy in his business such that it may be subject to warrantless searches. 576 U.S. at 424–26.

14

While the City expounds upon various regulations that may apply to the residential rental business, it does not explain how any of those regulations – other than perhaps Section 8 itself and the aforementioned Healthy Homes program – would put landlords on notice that their "property will be subject to periodic inspections undertaken for specific purposes." *Id.* at 425 (quoting *New York v. Burger*, 482 U.S. 691, 705 n.16 (1987) and *Donovan v. Dewey*, 452 U.S. 594, 600 (1981)). The Section 8 regulations themselves cannot justify a finding that the residential rental business is closely regulated. *See Johnson v. Smith*, 104 F.4th 153, 166 (10th Cir. 2024) (noting that the *Patel* Court "explicitly declined to consider the intrusiveness of the specific inspection provision under challenge in deciding whether the businesses had a reasonable expectation of privacy). And even assuming the Healthy Homes ordinances lacked a provision entitling landlords to demand a warrant, those ordinances were recently enacted in 2018, and likewise lend minimal if any support to the City's argument. *See id.* (citing *Free Speech Coal., Inc. v. Att'y Gen.*, 825 F.3d 149, 170 (3d Cir. 2016)) ("We are doubtful that the Government can create the reduced expectation of privacy of a closely regulated industry to justify warrantless inspections simply by mandating those inspections, particularly where that industry existed long before the regulation's enactment.").

The City does not cite a single case holding that the residential rental business is a "closely regulated" industry, and Plaintiffs have located none. To the contrary, in every case Plaintiffs have found addressing this issue, the court has held that this narrow exception does *not* apply to residential rental properties. *See MS Rentals, LLC*, 362 F. Supp. 3d at 417

15

("It would be remarkable to apply this exception to searches of rental properties, particularly residential rental properties, since 'the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'"). *See also People by James v. Commons West, LLC*, 194 N.Y.S.3d 451, 452 (N.Y. Sup. Ct. 2023) (finding that renting residential units is not a closely regulated industry); *Baker v. City of Portsmouth*, 2015 WL 5822659, at *5 (S.D. Ohio 2015) (unpublished opinion) (same).

As the City acknowledges, even if this Court were to find that the residential rental business is "closely regulated," the exception would not apply unless Section 8 (as mandated by the Ordinance) also meets the three additional *Burger* criteria: (1) the regulatory scheme is informed by a substantial government interest; (2) warrantless inspections must be necessary to further the regulatory scheme; and (3) the warrantless inspection regime must provide a constitutionally adequate substitute for a warrant. *See Johnson*, 104 F.4th at 174 (citing *Patel*). But even assuming for the sake of argument that the first and third criteria are met here (which Plaintiffs do not concede), the City offers no explanation for why *warrantless* inspections are necessary to further the regulatory scheme:

> [T]o establish why warrantless searches are necessary, the government needs to show more than just that violations *could* be concealed in the time it takes to obtain a warrant after a business refuses the inspection. It needs evidence from practice that the regulations could be effectively enforced only through a regime that relies on surprise warrantless inspections.

*Id.* at 176–77 (citing *Patel* and *Marshall*). The City provides no such evidence here.

Lastly, the City contends that the Ordinance does not violate the Fourth Amendment because it affords an adequate opportunity for pre-compliance review. The

16

City appears to be referring to the general administrative search exception to the Fourth Amendment's warrant requirement, which is conceptually distinct from the "closely regulated" business exception. *See Patel*, 576 U.S. at 424. The administrative search exception applies where "special needs" make the warrant and probable-cause requirement impracticable, and where the primary purpose of the search is distinguishable from the general interest in crime control. *Id.* at 420. The touchstone of constitutionality under this doctrine is whether the subject of the search is afforded an opportunity to obtain pre-compliance review before a neutral decisionmaker. *Id.*

Even assuming the administrative search doctrine would apply to Section 8 inspections, the supposed "pre-compliance review" under the Ordinance that the City cites plainly does not satisfy this exception. For one thing, the "extensive" review procedure outlined by the City only takes place *after* a landlord has supposedly violated the Ordinance's source-of-income provisions:

> This is not the order of events contemplated by the Fourth Amendment....
> Providing for review only after a citation for noncompliance has issued
> creates an unconstitutional Hobson's choice for the recipient of an
> administrative subpoena ... comply with a potentially overbroad subpoena in
> contravention of Fourth Amendment protections or risk a citation that may
> or may not withstand review for reasonableness.

*ESI/Emp. Sols., L.P. v. City of Dallas*, 450 F. Supp. 3d 700, 727 (E.D. Tex. 2020). But more fundamentally, this review procedure only pertains to whether or not a landlord has violated the Ordinance. It has absolutely nothing to do with reviewing whether the scope

17

of the government's (proposed) Section 8 inspection is reasonable, and it cannot rescue the Ordinance from its constitutional deficiencies.

The Ordinance unconstitutionally coerces landlords into waiving their Fourth Amendment rights. The City's arguments otherwise are without merit.

### C. The Ordinance actually conflicts with and is preempted by federal law that makes landlord participation in the Section 8 program voluntary.

The City further argues that even if the Ordinance mandates landlord participation in the Section 8 program, it is not preempted by federal law that makes Section 8 participation voluntary. The City's argument is premised on the idea that because various state and local source-of-income discrimination laws have been in place since at least the early 1980's, and because HUD and "presumably" Congress were aware of these laws, Congress would have expressly preempted them had it wanted to do so. There are several problems with the City's position.

First, to the extent the City relies on HUD regulations and commentary as evidence that *Congress* did not intend Section 8 to preempt state and local source-of-income discrimination laws, HUD's interpretation of Section 8 is no longer afforded judicial deference in light of the United States Supreme Court's overruling of *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984) by *Loper Bright Enterprises v. Raimondo*, __ U.S. __, 144 S. Ct. 2244 (2024). *See Loper Bright*, 144 S. Ct. at 2273.

Second, the City assumes that the state and local source-of-income discrimination laws of which Congress has "presumably" been aware are essentially equivalent to the

Ordinance. The City references, but does not actually cite to, "dozens" of states, counties, and cities with source-of-income discrimination laws on the books. But as Plaintiffs have pointed out, even seemingly minor distinctions can have a large impact on how a law actually operates. For example, before the Ordinance was enacted, the City *did* have a source-of-income discrimination law on the books — but that prior law did not make Section 8 participation mandatory, and so there would not have been any impetus for Congress to expressly preempt it.

Third, the City's argument misconstrues how conflict preemption works. Unlike express preemption and field preemption, which employ a top-down analysis to determine whether Congress expressly or impliedly intended to preempt *all* state and local laws in a given area, conflict preemption instead employs a bottom-up analysis to determine whether a *particular* state or local law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress. *See Arizona v. United States*, 567 U.S. 387, 398–99 (2012). Just because Congress has let stand a particular state or local source-of-income discrimination law does not reflect a Congressional judgment about any *other* law on the subject, which may well operate differently. Likewise, Congress's general statement that its intent in repealing Section 8's "take one, take all" and "endless lease" provisions was not to "excuse discrimination against section 8 holders" does not say anything about whether Congress would condone or condemn any particular state or local source-of-income discrimination law. *See* S. Rep. 105-21.

The City cites a number of cases in which courts have concluded that a state or local source-of-income discrimination law was not preempted by Section 8. Of course, none of those cases address the Ordinance at issue here, and none are binding on this Court. Moreover, each case contains flaws that significantly undermine its value as persuasive precedent:

- *Attorney General v. Brown*, 511 N.E.2d 1103 (Mass. 1987) (considers only that local and federal law share same ultimate goal of affordable housing, not that they employ conflicting methods to achieve that goal);

- *Franklin Tower One v. N.M.*, 725 A.2d 1104 (N.J. 1999) (same);

- *Comm'n on Human Rights v. Sullivan Assocs.*, 739 A.2d 238 (Conn. 1999) (same);

- *Montgomery Cnty. v. Glenmont Hills Assocs.*, 936 A.2d 325 (Md. 2007) (same; also gives deference and weight to HUD regulations);

- *Borbeau v. Jonathan Woodner Co.*, 549 F. Supp. 2d 78 (D.D.C. 2008) (same; also gives deference and weight to HUD regulations); and

- *Austin Apartment Ass'n v. City of Austin*, 89 F. Supp. 3d 886 (W.D. Tex. 2015) (same; also gives deference and weight to HUD regulations).

Finally, the City's attempt to distinguish *Forest Park II v. Hadley*, 336 F.3d 724 (8th Cir. 2003) is unavailing. The essential point for which Plaintiffs cite *Forest Park II* is that a rigorous conflict preemption analysis must look not only at the ultimate goals of the federal statute and the state or local law to assess whether they conflict, but also at the *methods* by which those goals are accomplished. *See* 336 F.3d at 733 (citing *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987)). The specifics of the federal low-income housing mortgage subsidy program at issue in *Forest Park II* are not dispositive. But to the extent they are

20

nonetheless instructive, the weight that the Eighth Circuit gave in *Forest Park II* to the fact that the program's goals included "the desire to involve private developers" in the process of creating affordable housing would likewise weigh in Plaintiff's favor here. *See* S. Rep. 105-21 (expressing desire to increase private landlord involvement in affordable housing efforts under Section 8).

The Ordinance actually conflicts with and is preempted by federal law that makes landlord participation in the Section 8 program voluntary. The City's arguments otherwise are without merit.

**D. The remaining factors — the balance of the equities, the public interest, and the threat of irreparable harm to Plaintiffs — weigh in favor of granting a preliminary injunction.**

The City lastly argues that the remaining factors for granting a preliminary injunction — the balance of the equities, the public interest, and the threat of irreparable harm to Plaintiffs — do not weigh in Plaintiffs' favor. This is incorrect.

As to the threat of irreparable harm, the City claims that Plaintiffs have not shown the threat of injury under the Ordinance is sufficiently imminent because Plaintiffs have not demonstrated that their own properties would be eligible for Section 8. But as noted above, such a showing is not necessary in order for Plaintiffs to sustain their constitutional challenges to the Ordinance. Moreover, Plaintiffs must only show that the threatened injury — in this case, prosecution under the Ordinance — is likely in the absence of an injunction, not that it is literally certain to occur. *See Richland/Wilkin Joint Powers Auth. V. United States Army Corps of Engineers*, 826 F.3d 1030, 1037 (8th Cir. 2016); *see also Clapper v.*

*Amnesty Intern. USA*, 568 U.S. 398, 431–33 (2013) (Breyer, J., dissenting) (noting that federal courts "frequently entertain actions for injunctions ... aimed at preventing future activities that are reasonably likely or highly likely to take place" and that literal certainty of harm is not required).

Plaintiffs have proffered evidence that they are landlords with residential rental properties within City limits, that they intend to continue declining to accept Section 8 vouchers (notwithstanding the Ordinance) due in part to their desire not to waive their Fourth Amendment rights, and that they credibly fear the threat of governmental action against them under the Ordinance. *See* Complaint, ¶¶ 37–49. This is all that Plaintiffs are required to show. *See Nastri v. Dykes*, 2024 WL 1338778, at *1–2 (2nd Cir. 2024) (unpublished opinion).

As to the balance of the equities and the public interest, the City focuses on the benefits to tenants that source-of-income discrimination laws allegedly provide, but this ignores the demonstrated threat to Plaintiffs' constitutional rights. *See D.M. by Bao Zing v. Minn. State High Sch. League*, 917 F.3d 994, 1003–04 (8th Cir. 2019). It also ignores the undeniable and substantial burdens that Section 8 participation imposes on landlords. *See Klossner v. IADU Table Mound MHP, LLC*, 65 F.4th 349, 356–57 (8th Cir. 2023) (Stras, C.J., concurring) (reasoning that the burdens imposed on landlords under the Section 8 program, including the substantial financial risks involved, would prevent the government from forcing landlords to accept Section 8 vouchers as a "reasonable accommodation" under the Fair Housing Amendments Act).

22

Plaintiffs have demonstrated that they are likely to succeed on the merits of their constitutional challenges to the Ordinance, which is the most significant factor in awarding a preliminary injunction. *See Cigna Corp. v. Bricker*, 103 F.4th 1336, 1342 (8th Cir. 2024). They have also shown that the remaining factors — the balance of the equities, the public interest, and the threat of irreparable harm to Plaintiffs — weigh in their favor. *See id.* The City's arguments otherwise are without merit.

III. **Conclusion**

For the above reasons, and as more fully set forth in Plaintiffs' Complaint, Motion, and Suggestions in Support, Plaintiffs are likely to succeed on the merits of one or both of their constitutional challenges to the Ordinance. Further, they are likely to suffer irreparable harm in the absence of an injunction, and the balance of the equities and the public interest weigh in favor of an injunction. Plaintiffs respectfully request that the Court enter a preliminary injunction immediately enjoining the City from enforcing the Ordinance, and for any other relief the Court deems just and proper.

Respectfully submitted,

**LEWIS RICE LLC**

By: /s/ Robert W. Tormohlen
Robert W. Tormohlen, Mo. #40024
Douglas S. Stone, Mo. #45320
Scott A. Wissel, Mo. #49085
Ashlyn Buck Lewis, Mo. #65501
1010 Walnut, Suite 500
Kansas City, Missouri 64106
Tel:   (816) 421-2500
Fax:  (816) 472-2500
rwtormohlen@lewisricekc.com
dstone@lewisricekc.com
sawissel@lewisricekc.com
alewis@lewisricekc.com

*and*

**SEYFERTH BLUMENTHAL
     & HARRIS LLC**

Kevin J. Karpin, Mo. #45465
Bruce A. Moothart, Mo. #45517
4801 Main Street, Suite 310
Kansas City, Missouri 64112
Tel:   (816) 756-0700
Fax:  (816) 756-3700
kevin@sbhlaw.com
bruce@sbhlaw.com

*Attorneys for Plaintiffs*

24

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all registered users.

/s/ Robert W. Tormohlen
*Attorney for Plaintiffs*