**EXHIBIT 1**

COMMITTEE SUBSTITUTE FOR ORDINANCE NO. 250491

Amending various sections of Chapter 38, "Civil Rights" for the purpose of removing government assistance payments such as Housing Choice Vouchers as sources of income for housing purposes.

BE IT ORDAINED BY THE COUNCIL OF KANSAS CITY:

Section 1. That Chapter 38 of the Code of Ordinances entitled "Civil Rights" is hereby amended by repealing Sections 38-1, 38-23 and 38-105, and enacting in lieu thereof new sections of like number and subject matter to read as follows:

**Sec. 38-1. Definitions.**

(a) The following words, terms and phrases, when used in this chapter, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning or an alternative definition has been provided:

(1) *Age* means an age of 40 or more years, except that it shall not be an unlawful employment practice for an employer to require the compulsory retirement of any person who has attained the age of 85 and who, for the two-year period immediately before retirement, is employed in a bona fide executive or high policymaking position, if such person is entitled to an immediate nonforfeitable annual retirement benefit from a pension, profit sharing, savings or deferred compensation plan, or any combination of such plans, of the employer, which equals, in the aggregate, at least $344,000.00.

(2) *City* means the City of Kansas City, Missouri.

(3) *Commission* means the city human rights commission.

(4) *Complainant* means any person claiming injury by the alleged violation of Chapter 213, RSMo, or of this Chapter, including persons who believe they will be injured by an unlawful discriminatory practice that is about to occur.

(5) *Complaint* means a verified written statement of facts and circumstances, including dates, times, places and names of persons involved in any alleged violation of any provision of Chapter 213, RSMo, or of this Chapter.

(6) *Contract* means any contract to which the city shall be a contracting party, except the following:

    a. Personal services contracts.

    b. Emergency requisitions for goods, supplies or services.

    c. Impressed accounts in the nature of petty cash funds.

d. Contract or lease, the cost of which will not exceed $300,000.00.

(7) *Covered multi-family dwelling* means a building consisting of four or more units if the building has one or more elevators or a ground floor unit in a building consisting of four or more units.

(8) *Criminal history status* means the record of an individual's interactions with the criminal justice system, including but not limited to, arrests, detentions, convictions, court orders, and other contacts with law enforcement and the court system.

(9) *Department* means the department of civil rights and equal opportunity.

(10) *Director* means the director of the civil rights and equal opportunity department or their delegate.

(11) *Disability* means with respect to employment, a person who is otherwise qualified and who, with reasonable accommodation, can perform the essential functions of the job in question. Generally, a person with a disability is any person who:

   a. Has a physical or mental impairment which substantially limits one or more major life activities;

   b. Has a record of having such impairment; or

   c. Is regarded as having such an impairment.

(12) *Dwelling* means any building, structure or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure or portion thereof.

(13) *Employee* means any individual employed by an employer, but does not include an individual employed by his parents, spouse or child or any individual employed to render services as a domestic in the home of the employer.

(14) *Employer* includes any person employing six or more employees.

(15) *Employment agency* means any person, agency or organization, regularly undertaking, with or without compensation, to procure opportunities for employment or to procure, recruit, refer or place employees.

(16) *Familial status* means one or more individuals, who have not attained the age of 18 years, being domiciled with:

a. A parent or another person having legal custody of such individual or individuals; or

b. The designee of such parent or other person having such custody, with the written permission of such parent or other person. The protection afforded against discrimination on the basis of familial status shall apply to any person who is pregnant or is in the process of securing legal custody of any individual who has not attained the age of 18 years. No provision in this chapter regarding familial status shall apply to housing for older persons, as defined in section 3607 of title 42 of the United States Code Annotated.

(17) *Family* includes a single individual.

(18) *Franchise holder* means any individual, partnership, corporation, association or other entity, or any combination of such entities, holding a franchise hereafter granted or renewed by the city.

(19) *Gender identity* means the actual or perceived appearance, expression, identity or behavior of a person as being male or female, whether or not that appearance, expression, identity or behavior is different from that traditionally associated with the person's designated sex at birth.

(20) *Labor organization* means any organization which exists for the purpose in whole or in part of collective bargaining or for dealing with employers concerning grievances, terms or conditions of employment, or for other mutual aid or protection in relation to employment.

(21) *Owner* means any person who:

a. has legal title to any building or structure with or without accompanying actual possession thereof; or

b. has charge, care or control of any building or structure or part thereof as agent or personal representative of the person having legal title to the building or structure or part thereof; or

c. is an agent or designee of a person listed in subsections 1 or 2 herein; or

(22) *Performance of work* means the furnishing of any personal service, labor, materials or equipment used in the fulfillment of a contractor's obligation under a city contract.

(23) *Person* includes one or more individuals, corporations, partnerships, associations, labor organizations, legal representatives, mutual companies, joint stock companies, trusts, unincorporated organizations, trustees, trustees in bankruptcy,

receivers, fiduciaries and other organizations; except the term "person" does not include any local, state or federal governmental entity.

(24) *Prohibited dress code* means a set of rules governing, prohibiting or limiting access to a place or business, or portion thereof, defined herein as a "public accommodation" because of any of the following:

   a. The wearing of jewelry, the manner in which jewelry is worn or the combination of items of jewelry worn,

   b. The wearing of a garment or headdress which is generally associated with specific religions, national origins or ancestry,

   c. The length of the sleeve of a shirt or the leg of a pair of pants or shorts is too long, except that nothing herein shall be construed to prohibit a dress code that requires the wearing of a shirt,

   d. The style, cut or length of a hair style,

   e. The colors of the garments,

   f. In conjunction with a major Kansas City sporting event the wearing of athletic apparel which displays either a number, a professional or college team name or the name of a player;

   g. The wearing of tee-shirts, except that nothing herein shall be construed to prohibit a dress code that requires such tee-shirts to have sleeves, or to prohibit a dress code that does not allow undershirts, undergarments, or tee-shirts of an inappropriate length. Designer tee-shirts, which are fitted and neat, cannot be banned.

(25) *Public accommodation* means any place or business offering or holding out to the general public goods, services, privileges, facilities, advantages or accommodations for the peace, comfort, health, welfare and safety of the general public, or providing food, drink, shelter, recreation or amusement, including but not limited to:

   a. Any inn, hotel, motel or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence.

   b. Any restaurant, tavern, cafeteria, lunchroom, lunch counter, soda fountain or other facility principally engaged in selling food for consumption on the premises, including but not limited to any such facility located on the premises of any retail establishment.

- c. Any gasoline station, including all facilities located on the premises of such gasoline station and made available to the patrons thereof.

- d. Any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment.

- e. Any public facility owned, operated or managed by or on behalf of this city or any agency or subdivision thereof, or any public corporation; and any such facility supported in whole or in part by public funds.

- f. Any establishment which is physically located within the premises of any establishment otherwise covered by this definition or within the premises in which is physically located any such covered establishment, and which holds itself out as serving patrons of such covered establishment.

- g. Any institution, association, club or other entity that has over 250 members, provides regular meal service, and regularly receives payment for meals, beverages, dues, fees, the use of its facilities or services directly or indirectly from or on behalf of nonmembers in furtherance of trade or business.

(26) *Redevelopment area* means a tax increment redevelopment area as defined in section 99.805(11); RSMo, a planned industrial expansion project area as defined in section 100.300, et seq., RSMo; an urban renewal project area or land clearance project area as defined in section 99.300, et seq., RSMo; any area under the control of the port authority of Kansas City, Missouri, or subject to a contract, lease or other instrument to which the port authority is a party; or an area determined by the city to be blighted pursuant to chapter 353, RSMo.

(27) *Rent* means to lease, sublease, let or otherwise grant for a consideration the right to occupy premises not owned by the occupant.

(28) *Respondent* means any person against whom it shall be alleged by complaint or identified during the course of an investigation that such person has violated, is violating or is about to violate any provision of Chapter 213, RSMo, or this Chapter.

(29) *Screening Practices* means the standard manner by which an owner evaluates and assesses prospective tenants prior to entering into a rental agreement.

(30) *Sex* shall include sexual harassment.

(31) *Sexual orientation* means actual or perceived heterosexuality, homosexuality or bisexuality.

(32) *Source of income* means the type of income or finances used by an individual to acquire goods and services for themselves, their dependents, or others. It includes

reasonably verifiable and lawful income from any occupation, profession, contract, agreement, activity, any type of private, non-profit, or government assistance or payment, military pension payments, disability payments, court ordered payments, or any other form of reasonably verifiable and lawful income, including cash or tipped wages and payments from strike funds. Source of income includes the program requirements for any type of private, non-profit, or government assistance or payment, unless compliance with such requirements would require unreasonable structural modifications to the dwelling. Source of income shall not include funding from a Federal or other housing assistance program, including the Housing Choice Vouchers or other Section 8 programs created pursuant to the Housing Act of 1937.

(33) *Subcontractor* means any individual, partnership, corporation, association or other entity, or other combination of such entities, which shall undertake, by virtue of a separate contract with a contractor, to fulfill all or any part of any contractor's obligation under a contract with the city, or who shall exercise any right granted to a franchise holder, and who has 50 or more employees exclusive of the parents, spouse or children or such subcontractor.

(34) *Systematic investigation* means a series of investigations, as defined in section 38-23, sufficient to understand an owner's common and usual screening practices and determine whether those practices violate any Ordinance.

(35) *Unlawful discriminatory practice* means any discriminatory practice as defined and prohibited by sections 38-103, 38-105, 38-107, 38-109, 38-111 and 38-113.

### Sec. 38-23. Complaint procedure.

(a) *Filing of complaint.*

(1) Any person claiming injury by an allegedly unlawful discriminatory practice may, by themselves, a representative designated in writing, or a city official, submit a complaint with the director by, emailing an email address designated by the civil rights enforcement office, visiting the civil rights enforcement office in person during business hours, or calling 311 to begin the process of submitting a formal verified complaint. This complaint shall state the name and address of the person or business entity alleged to have committed the unlawful discriminatory practice complained of and which shall set forth the particulars thereof and contain such other information as may be required by the director for the investigation of the complaint.

(2) Any complaint filed pursuant to Chapter 213, RSMo, or this chapter must be filed within 180 days after the alleged unlawful discriminatory practice could have been discovered through reasonable diligence.

(3) The city shall provide interpretation and translation services to any person attempting to submit a complaint pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d et. seq. and Ex. Ord. No. 13166.

(b) *Investigation.* After the filing of any complaint other than those described in section 38-23(c), the director shall:

(1) During the period beginning with the filing of such complaint and ending with the notice of public hearing before the commission, to the extent possible, engage in conciliation with respect to such complaint. Any agreement reached during these conciliation efforts shall conform to the requirements of subsection (e) of this section.

(2) Promptly serve notice upon the complainant acknowledging and advising the complainant of the time limits and choice of forums provided under Chapter 213, RSMo, and this chapter.

(3) Promptly serve notice on the respondent or the person charged with a discriminatory practice advising of his or her procedural rights and obligations under this chapter, together with a copy of the complaint.

(4) Commence investigation of the complaint within 30 days of the receipt of the complaint.

(5) For housing and public accommodation complaints, complete the investigation of the complaint within 100 days unless it is impracticable. If the director is unable to complete the investigation within 100 days, the director shall notify the complainant and the respondent in writing of the reasons for not doing so.

(6) Make final administrative disposition of a housing or public accommodations complaint within one year of the date of receipt of a complaint unless it is impracticable to do so, in which case the director shall notify the complainant and respondent in writing of the reasons for not doing so.

(c) *Source of income investigation.* After the filing of any complaint solely pertaining to source of income discrimination or discrimination as defined in section 38-105(d)(10)-(11), the director shall:

(1) To the extent possible, engage in conciliation with respect to such complaint during the period beginning with the filing of such complaint and ending with either the issuance of a fine or any other punitive measures by the city or a finding of no probable cause pursuant to subsection (d) of this section. Any agreement reached during these conciliation efforts shall conform to the requirements of subsection (e) of this section.

(2) Promptly serve notice upon the complainant acknowledging and advising the complainant of the time limits and choice of forums provided under this chapter.

(3) Promptly serve notice on the respondent or the person charged with a discriminatory practice advising of his or her procedural rights and obligations under this chapter, together with a copy of the complaint.

(4) Commence investigation of the complaint within ten business days of the receipt of the complaint.

(5) Complete the investigation of the complaint within 30 days of the receipt of the complaint. If the director is unable to complete the investigation within 30 days, the director shall notify the complainant and the respondent in writing of the reasons for not doing so.

(d) *No probable cause finding.* If it shall be determined after such investigation that no probable cause exists for crediting the allegations of the complaint, the director shall cause to be issued and served upon all parties, written notice of such determination.

(e) *Probable cause finding; conciliation.*

(1) If it shall be determined after such investigation that probable cause exists for crediting the allegations of the complaint, the director shall immediately endeavor to eliminate the unlawful discriminatory practice complained of by conference, conciliation and persuasion. Each conciliation agreement shall include provisions requiring the respondent to refrain from the commission of such allegedly unlawful discriminatory practice in the future and may contain such further provisions as may be agreed upon by the complainant and the respondent subject to the approval of the director. The director shall not disclose what has transpired in the course of such endeavors and shall not make or maintain a public record of such endeavors as the term "public record" is defined in Chapter 610, RSMo.

(2) If the respondent, the complainant and the director agree upon conciliation terms, the director shall compile the terms of the conciliation agreement for the signature of the complainant, respondent and director.

(f) *Failure to conciliate; hearing or prosecution.* If the director believes that they have failed to eliminate an allegedly unlawful discriminatory practice through conciliation, the director shall cause to be issued and served a written notice thereof. If the complaint alleges a discriminatory practice prohibited by this chapter, the director shall refer the matter to the city counselor for possible prosecution in municipal court or administer an administrative citation pursuant to section 38-101, and the director shall also begin a systematic investigation of all the respondent's rental properties in Kansas City and their screening practices. If the complaint alleges a discriminatory practice prohibited by Chapter 213, RSMo, the director shall refer the matter to the commission for hearing.

(g) In the event any section, paragraph, sentence, clause, phrase or portions of this section is declared invalid for any reason, the remainder of this section shall remain in full force and effect.

**Sec. 38-105. Housing.**

(a) It is the policy of the city to provide, within constitutional limitations, for fair housing throughout the corporate limits of the city.

(b) Within this section, "protected trait" shall mean actual or perceived race, color, religion, national origin, sex, mental or physical disability, marital status, familial status, age sexual orientation or gender identity, gender expression, ethnic background, being a victim of domestic violence, sexual assault or stalking, or source of income.

(c) If the director finds probable cause of a violation of this section, the director shall notify the director of health of the violation and assist the director of health in any related investigation, in addition to pursuing any enforcement authorized by Chapter 213 RSMo, this chapter or other city ordinances.

(d) The following discriminatory housing practices shall be unlawful:

(1) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of property offered for sale or rental, or otherwise make unavailable or deny a dwelling to any person, because of a protected trait, other than, in the case of a potential sale, source of income.

(2) To discriminate against any person in the terms, conditions or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of a protected trait, other than, in the case of a potential sale, source of income.

(3) To make, print or publish, or cause to be made, printed or published, any notice, statement or advertisement with respect to the sale or rental of a dwelling that indicates any preference or limitation based on a protected trait or an intention to make any such preference, limitation, or discrimination, other than, in the case of a potential sale, source of income.

(4) To represent to any person, because of a protected trait, that any dwelling is not available for inspection, sale or rental when such dwelling is in fact so available, other than, in the case of a potential sale, source of income.

(5) To induce or attempt to induce any person to sell or rent any dwelling by representations regarding the entry or prospective entry into the neighborhood of persons of a particular protected trait, other than, in the case of a potential sale, source of income.

(6) For a person in the business of insuring against hazards to refuse to enter into or discriminate in the terms, conditions or privileges of a contract of insurance against hazards to a dwelling because of a protected trait pertaining to persons owning or residing in or near the dwelling, other than, in the case of a potential sale, source of income.

(7) To discriminate in the sale or rental or to otherwise make unavailable or deny a dwelling to any buyer or renter because of a disability of:

    a. That buyer or renter;

    b. A person residing in or intending to reside in that dwelling after it is sold, rented or made available; or

    c. Any person associated with that buyer or renter.

(8) To discriminate against any person in the terms, conditions or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a disability of:

    a. That person;

    b. A person residing in or intending to reside in that dwelling after it is so sold, rented or made available; or

    c. Any person associated with that person.

(9) To sexually harass a property owner or tenant.

(10) To refuse to take into account a tenant's verifiable and lawful sources of income.

(11) To increase charges, reduce services, or require the tenant bear financial or other responsibility for any penalties imposed as a result of violating sections 38-105, 38-111 or 38-113.

(12) In no event shall an owner be compelled to participate in an otherwise voluntary benefit or subsidy program.

(e) Anytime a person denies an application for rental housing, said person must inform the prospective tenant that their application was denied.

(1) If a prospective tenant requests the rationale for their denied application, the person who denied their application must affirmatively state that it was not on the basis of their membership of a protected class or a protected trait as defined by this chapter, and provide the tenant with a copy of the tenants bill of rights as published by the rental housing assistance unit under section 35-10.

(f) For purposes of this section, the term "discrimination" includes:

(1) A refusal to permit at the expense of the disabled person reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises; except that, in the case of a rental, the landlord may, where it is reasonable to do so, condition permission for a modification on the renter's agreeing to restore the interior of the premises to the condition that existed before the modification, reasonable wear and tear excepted;

(2) A refusal to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling; or

(3) In connection with the design and construction of covered multifamily dwellings for first occupancy, a failure to design and construct those dwellings in a manner that:

    a. The public and common use portions of such dwellings are readily accessible to and usable by disabled persons. This shall include at least one building entrance on an accessible route unless it is impracticable to do so because of the terrain or unusual characteristics of the site;

    b. All doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by disabled persons in wheelchairs; and

    c. All premises within such dwellings contain the following features of adaptive design:

        1. An accessible route into and through the dwelling;

        2. Light switches, electrical outlets, thermostats and other environmental controls in accessible locations;

        3. Reinforcements in bathroom walls to allow later installation of grab bars; and

        4. Usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

Compliance with the appropriate requirements of the American National Standard for buildings and facilities providing accessibility and usability for physically disabled persons, commonly cited as ANSI A1 17.1, suffices to satisfy that the requirements of subsection (b)(3)a of this section are met.

(4) For purposes of subsections (a)(7) and (8) of this section, discrimination includes any act that would be discrimination under 42 USC 3604(f)(3) through (9).

(g) Nothing in this section shall apply to rooms or units in dwellings containing living quarters occupied or intended to be occupied by no more than four families living independently of each other if the owner actually maintains or occupies one of such living quarters as the owner's residence, and if the dwelling contains any rooms, except hallways, which are shared by the families or the owner.

(h) Nothing in this section shall prohibit a religious organization, association or society, or any nonprofit institution or organization operated, supervised or controlled by or in conjunction with a religious organization, association or society, from discriminating in the sale, rental or occupancy of dwellings which it owns or operates for other than a commercial purpose on the basis of religion, sexual orientation or gender identity, or from giving preference to persons on those bases.

(i) In the event any section, paragraph, sentence, clause, phrase or portions of this section is declared invalid for any reason, the remainder of this section shall remain in full force and effect.

Approved as to form:

_____
Joseph A. Guarino
Senior Associate City Attorney

Authenticated as Passed

Quin_____, Mayor

Marilyn _____, City Clerk

JUN 26 2025

Date Passed